JOHN CLABAUGH AND ROBERT LANDERS, *vs.* JACOB BY-ERLY.—*December* 1847.

Where there are two mortgages of the same property, that which is first recorded has preference under the act of 1825, ch. 203; and a subsequent mortgagee can have no relief against a mortgage executed and recorded prior to his own, unless he can show it to be fraudulent as against him.

The principle, that equity will consider that as done which ought to be done, is an established maxim; but the court, in order to be justified in regarding an act as done, must have jurisdiction of the case, and be able to insist that it shall be done. A mere parol agreement to execute a mortgage, is one of which a court of chancery can take no notice, and, of course, cannot regard it as performed.

The recitals in a subsequent mortgage, cannot prejudice the rights of a prior mortgagee, acquired before its execution.

The rule, that a prior mortgagee, who witnesses a subsequent mortgage, without disclosing his own incumbrance, will be postponed to such subsequent mortgage, does not apply where the prior mortgage is recorded.

Mere silence is not sufficient to affect the right of the prior mortgagee. There must be actual fraud charged and proved, such as false representations, assurances of good title, or deceptive silence when information is asked. The burden of proving such fraud lies on the subsequent mortgagee.

Where a subsequent mortgagee knew of the existence of a prior mortgage at the time his own was executed, in September 1842, but made no complaint until February 1844, it was HELD, that by such a delay, he had lost his equity, if any ever existed, in his favor.

APPEAL from the Equity Side of *Carroll* county court.

The bill in this case was filed by *Jacob Byerly*, (the appellee,) against the appellants, and *Jacob Hupe* and *Henry H. Hoppe*,

on the 22nd of February 1844, for the sale of certain real estate mortgaged to the complainant by said *Hupe.*

The bill alleges that *Hupe* mortgaged the property in question, to the complainant, on the 3d of September 1842, to secure the payment of his, *(Hupe's,)* promissory note for the sum of $1160, dated 1st of September 1842, and payable to complainant, on or before the 1st of March 1844, with interest every six months from date ; that no part of the principal or interest of said note, with the exception of $30, has been paid, although the time for the payment of the interest has elapsed, and due demand has been made. It further states, that previous to the mortgage to complainant, said *Hupe* mortgaged the same property to *John Clabaugh* and *Robert Landers,* by deed of mortgage dated 2nd of September 1842, to secure the payment of $192.71, and as counter security for the payment of about $400, but avers, that at the time they, *(Clabaugh* and *Landers,)* received said mortgage, and at the time it was executed, they knew that said *Hupe* had agreed to execute the mortgage to the complainant, and it was understood and agreed by *Hupe* and them, that complainant's mortgage should be executed first, and be the first lien on the property; and at the time they agreed with *Hupe* for their mortgage, they well knew that *Hupe* had agreed to secure the debt due complainant, by a mortgage on said property; and as part and parcel of the same transaction, it was agreed by all parties interested that complainant's mortgage should be executed first, and be the first lien on the property, and said *Hupe* agreed to secure said note to complainant, by mortgage, at the time it was executed; and that complainant has paid off all the claims against *Hupe* enumerated in his mortgage, and has in all respects complied with his agreement with said *Hupe.* The bill further states that the property has been levied upon by *John H. Hoppe,* the sheriff of *Carroll* county, by virtue of executions issued upon judgments recovered before either of the aforesaid mortgages, and advertised by said sheriff for sale. It then prays for a decree for a sale to satisfy the interest due on complainant's mortgage at the time of filing the bill, and that such decree may be allowed to stand as security for the principal when it becomes due; and

may declare complainant's mortgage to be preferred to that of *Clabaugh* and *Landers*. And that a receiver may be appointed by this court, to receive from said sheriff any money that may remain in his hands as proceeds of the sale to be made by him, after satisfying said executions in his hands, to be held by said receiver and applied under the direction of this court to the satisfaction of complainant's claim and for general relief.

Exhibit A, filed with the bill is the mortgage from *Jacob Hupe* to *Jacob Byerly*, dated the 3d of September 1842, and recorded on the 5th of the same month. It recites, that "whereas said *Hupe* is indebted to said *Byerly* in a large sum of money, about $110, and said *Byerly* has agreed to advance to said *Hupe* more money, in such manner as to render the same available to said *Hupe*, in paying off some judgments against him. That is to say," &c., (enumerating the judgments,) "it being understood that said *Byerly* is to see the above judgments paid; that is to say, go and pay them himself. And it is further agreed that said *Byerly*, having placed in the hands of *Jacob Grove* $678.41, which was to go to the payment of a judgment of *Thomas* and *Philip Baltzell* against said *Hupe*, and whereas in consideration and settlement of the above, and the above demands which said *Byerly* has on said *Hupe*, said *Hupe* gave his promissory note for $1160, dated September 1st, 1842, with interest payable every six months, which note is worded as follows, to wit: '*Carroll* county, September 1st, 1842. On or before the first day of March, eighteen hundred and forty-four, I promise to pay *Jacob Byerly*, or order, eleven hundred and sixty dollars, with interest payable every six months, for value received. Signed, *Jacob Hupe*.' And whereas it was at the time the note was given, and the settlement took place, agreed, as part of the transaction, that these presents should be executed, as a mortgage to secure the payment of said note: Now this indenture witnesseth;" &c., conveying the property, and made defeasible upon payment by *Hupe* of said note.

The bill was subsequently amended so as to charge that *Hupe* did not owe *Clabaugh* the money which the mortgage to him professed to secure, and that the said sheriff had sold

the property under said executions, for the sum of $1320, which is a much larger sum than the debt, interest and costs on all the judgments against the property, and that a large sum of money remains in the hands of the sheriff; which the bill prays may be applied in satisfaction of the complainant's claim, and for an injunction restraining said sheriff from paying the same over to said *Hupe;* which was granted.

The answer of *Hupe* denies the equities of the bill, and avers that respondent entered into an agreement to execute a mortgage to the complainant, and one *John Delaplane,* jointly, for moneys advanced, and to be advanced him, by them; to which agreement, however, *Clabaugh* and *Landers* were not in any manner privy, or parties, nor had they any knowledge whatever, thereof; that long before said agreement, he had promised and agreed with said *Clabaugh* and *Landers,* that he would execute to them a mortgage, to secure the payment of the debts due to them, and for which they were security for respondent. That complainant afterwards refused to accept a mortgage to *Delaplane* and himself jointly, and then respondent proceeded to execute the mortgage to *Clabaugh* and *Landers;* and he distinctly and positively avers, that at the time of executing said mortgage, there was no agreement whatever that he was to execute any mortgage, subsequently, to said complainant; and that there was no agreement or understanding whatever, that said mortgage to *Clabaugh* and *Landers* should be postponed, or in any way subject to a mortgage afterwards to be executed to complainant. The answer further avers, that at the time he executed the mortgage to the complainant, neither the complainant nor said *Clabaugh* or *Landers* were present, and that he executed the same at the instance of the counsel of the complainant, and not at the instance of the complainant himself; who had no knowledge whatever thereof.

The joint answer of *Clabaugh* and *Landers,* admits the execution of the mortgage to the complainant, and also the mortgage to respondents, dated 2nd of September 1842, but denies, that at the time of executing the latter mortgage, it was understood, or agreed by or between these respondents

and said *Hupe*, or the complainant, or any of them, that the said *Hupe* was to execute to complainant a mortgage to secure the payment of said note, which was to have preference to or over the mortgage executed by said *Hupe* to respondents; and they positively deny, that at the time of execution of said mortgage to them, there was any such knowledge, understanding or agreement, as is alleged in the bill; that after the execution of both mortgages, the solicitor of the complainant called on respondent, *Clabaugh*, and requested him to agree that the mortgage to complainant should have preference over respondent's mortgage, when he expressly refused to enter into any such agreement; and respondents distinctly state, that there has never been by them, or either of them, any such agreement or understanding whatever, or any other agreement in relation to said subject; and that they have always considered their mortgage as having priority over the mortgage to the complainant. The answer then proceeds to state the *bona fides* of the consideration upon which their mortgage was executed. The mortgage itself is filed as an exhibit with the answer, and bears date the 2nd of September 1842, and was recorded on the same day.

The answer of *Hoppe*, the sheriff, simply admits that he has in hand the sum of $740.62, proceeds of the property, which he is ready to pay as the court shall direct.

Upon the coming in of these answers, the court ordered the injunction to be continued until further order, and referred the cause to the auditor to state an account, settling and adjusting the respective priorities of the complainant and respondents over the fund, with directions to take testimony at the instance of either party, upon the usual notice.

Under this order it was proved before the auditor, that on the 28th of January 1842, the *Baltzell's* held a judgment against *Hupe*, for about $678.41, upon which a *fi. fa.* had been issued, and placed in the hands of *Grove*, the sheriff; and that while said *fi. fa.* was in the hands of the sheriff, *Hupe*, to save his property, induced *Byerly* to pay the sheriff the sum of $678.41, to satisfy said *fi. fa.*, upon an express stipulation and agreement that said judgment should be as-

signed to him as security for said sum. That on the 1st of September 1842, said sheriff held other writs of *fi. fa.* in favor of sundry persons, against *Hupe,* by virtue of which *Hupe's* real estate was advertised to be sold on the 1st of September 1842; and to prevent said sale, *Byerly* was induced by *Hupe* to assume upon himself, and pay said judgments, which he did upon the express stipulation and agreement, that *Hupe* would secure him by mortgage on said land.

*Jacob Root,* a competent witness, states, that on the day of sale, 1st of September 1842, he was at the house of *Hupe;* the sheriff, *Hupe, Clabaugh, John Delaplane* and *Byerly* were present. It was then agreed by *Byerly, Hupe* and *Delaplane,* that *Byerly* should pay up the judgments, and *Hupe* should give him and *Delaplane* a mortgage. *Clabaugh* was present when this agreement was made; the claim of *Delaplane* was for a judgment in favor of the *Frederick County Bank,* which was to have preference over that of *Byerly.*

*Nimrod Norris,* stated that a few days after the day of sale, he saw *Clabaugh,* and conversed with him on the subject. *Clabaugh* said that he was sent for to go to *Hupe's* on the day of the intended sale; that there, after conversing with the parties concerned, *Byerly* agreed to pay the different claims to the sheriff, provided *Hupe* would give him a lien on his property, which *Hupe* agreed to do, and the sale was accordingly stopped. He, *(Clabaugh,)* then called *Hupe* aside, and told him he must have some satisfaction for the notes he held; that *Hupe* agreed to give him any satisfaction he had in his power; that he, *(Clabaugh,)* agreed that *Hupe* should give him a mortgage to come in after *Byerly's* mortgage, provided there should be any funds left. That the next morning, when the parties were about to start for *Westminster,* he, *(Clabaugh,)* gave his claims to *Delaplane,* and told him, that provided *Hupe* acknowledged a mortgage to him for the security of said notes, to come in after *Byerly's* mortgage, he should bring the notes back, otherwise, to leave them in the hands of the sheriff for immediate suit. *Clabaugh,* also, at the same time, told witness, that *Delaplane* said, that when they got to *Westminster,* *Hupe* refused to execute *Byerly's* mortgage, and *Delaplane*

then drew his, *(Clabaugh's,)* mortgage, which *Hupe* executed.

*John Delaplane* states, that he wrote the mortgage executed by *Hupe* in favor of *Clabaugh* and *Landers*, on the same day it was executed, (2nd of September 1842.) *Clabaugh* and *Landers* were not present, and there was no agreement between them and *Byerly* on that day, that there was to be any other mortgage executed. It was previously understood that *Byerly* and myself were to take a joint mortgage or deed of trust, whichever *Mr. Raymond, (Byerly's* counsel,) should think best. For my part of the mortgage I was to pay a judgment to the sheriff in favor of the *Frederick* bank against *Hupe*. *Byerly* called on *Mr. Raymond,* who advised him to take a separate mortgage, which *Hupe* refused to execute. When I was drawing the mortgage to *Clabaugh* and *Landers*, I asked *Mr. Raymond,* if *Hupe* executed a mortgage on that day to *Byerly,* how it was to be inserted that his *(Byerly's)* was to have the preference? He told me that I should insert, that *Byerly* was to have the preference. I said something about it in the mortgage, but as *Hupe* refused to execute the mortgage to *Byerly* and *myself,* I struck it out before it (the mortgage to *Clabaugh* and *Landers,*) was executed.

On the 4th of June 1846 the auditor made his report, and stated an account, in which he allowed the claim of the complainant a preference over the mortgage to *Clabaugh* and *Landers*, and the court, (BREWER, J.,) on the 17th of July 1846, ratified and confirmed this audit, and ordered and decreed the sheriff to bring into court, to be paid to the complainant, the sum of $631.00, the residue of the funds in his hands. From this decree, two of the defendants, *Claubagh* and *Landers*, appealed to this court.

The cause was argued before ARCHER, C. J., CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By WM. P. MAULSBY for the appellants, and
By JOS. M. PALMER, for the appellee.

MAGRUDER, J., delivered the opinion of this court.

The appellee in this court was the complainant in the court below. He insists that his mortgage dated the third day of September, eighteen hundred and forty-two, shall be preferred to the mortgage of the appellants, not only executed but recorded before the execution of the appellee's mortgage. The act of Assembly of 1825, chap. 203, does not give any such preference. It provides, (sect. 1st,) that in case of several deeds for the same real or personal estate, the deed which shall be first recorded according to law, shall have the preference in all courts of law and equity in this State, if the same be for valuable consideration. The same act of Assembly, in its second section, provides, that no person shall derive any advantage from the recording of a deed intended only as a security in the nature of a mortgage, unless every instrument operating as a defeasance of such deed or mortgage, or explanatory of its being designed to have the effect of a mortgage, or conditional deed, be also therewith recorded.

*Prima facie* then, the prior deed in this case, the deed to the appellants, being the deed not only first executed, but also first recorded, is to be preferred; and it would seem that the appellee has no title to relief, unless there be proof that the mortgage executed to the appellants, is for some reason or other, fraudulent and void as against the appellee. The record furnishes no proof of any such fraud, or which would warrant the court in giving relief upon such ground.

If this was a controversy between the mortgagor and the appellee, the latter might have reasons, which do not exist in this case, for complaint. But the suit is between mortgagees, all of them creditors, and to be considered as *bona fide* creditors of the mortgagor, and each of them having an unquestionable right to secure, if he can, the money due to him. All of them obtained a mortgage, and the mortgages convey the same property, to secure to each one the money due to him. The fund has proved to be insufficient to pay the several claims, and the question now is, which has, in equity, the preference?

By the appellee it is insisted that he is to be preferred, because of an agreement which the mortgagor made with him

before the date of the deed to the appellants, and upon the principle, that equity will consider that as done which ought to be done.  No doubt, this, when correctly understood, is an established maxim in equity.  But there are many things which a man ought to feel himself bound to do, many promises, which the party promising ought to feel himself bound to fulfil, and yet which the chancery court cannot compel him to perform. The court then, in order to be justified in regarding an act as done, must have jurisdiction of the case, and be able to insist that it shall be done.  It is said that on the first September 1842, the mortgagor promised to give a mortgage, and, simply for this reason, he is to be considered as having given one on that day. Now, if this was true, how could it benefit the appellees. They would then have a mortgage one day older than that of the appellants, but in order to be entitled to a preference, it must be first recorded.

But the alleged promise is contradicted by the mortgagor, and there is no written evidence of it.  The agreement, then, is one of which a court of chancery can take no notice; (see 3rd *Powel*, *p*. 150,) and of course cannot regard it as performed. We are told that the promise is to be found in the deed of mortgage executed on the third of September.  The recitals, however, in that deed, cannot prejudice the rights of the appellant, acquired before its execution.  But the question in this suit is, not whether the mortgagor ever made a promise to the appellee, which he is bound to perform, but was there on the 2nd September 1842, any promise binding on the mortgagor, and of which the appellants were bound, or could be presumed to have notice?  Of a promise made the day after the execution of the deed to the appellants, they could have had no knowledge, at the time, of the execution of that deed.  In this case, too, it appears, that a mortgage has been executed and accepted by the appellee, and it would be difficult for him, in this suit, and after accepting of that mortgage, to maintain that he is entitled to another mortgage, or to interpolate into the one which he has received, other provisions.

Much has been said about the original claims against *Hupe*, the obligor.  They were judgments, and some of these judg-

ments were liens on the land, and the appellee, it is thought, ought to be regarded as the assignee of them. If such was the design, the appellee ought to have taken care not to *pay* them. His contract ought to have been made, not with the debtor, but with the creditors, who, alone, could make such contracts and assignments. If the judgments could be considered as unsatisfied, and the appellee the assignee of them, it is supposed that a court of law could give him all the relief which he now seeks, and thus he would be without excuse for coming into equity.

It would seem, then, that both the act of 1825, before alluded to, and the law which previously existed, (see 2 *John's Ch. Rpts.*, 603,) would tell us that the mortgage of the appellees is not to be preferred to that of the appellants.

In the case of *Binckerhoff vs. Lansing*, 4 *John's Ch. Repts.*, 65, it is said, that "although if a prior mortgagee witnesses a subsequent mortgage, knowing its contents, without disclosing his own incumbrance, he will be postponed or barred; yet this rule does not apply, if the prior mortgage is registered." It is added, "that to affect the right of such prior mortgagee, mere silence is not sufficient. There must be actual fraud charged and proved, such as false representations, or denial upon inquiry, or artful assurances of good title, or deceptive silence, when information is asked. The burthen of proving such fraud lies on the subsequent mortgagee."

It is difficult to discover, upon what matter, to be found in this record, relief could be obtained by the appellee. According to the statement in his bill of complaint, the mortgage was to be given to secure the payment of the money due on a note dated 1st September 1842, and the mortgage which he says ought to be preferred to that of the appellants, states the consideration of that note. The sum actually due to the mortgagee at the time was about $110; the rest of the consideration was, the "said *Byerly* has agreed to advance to said *Hupe* more money, in such manner, as to render the same available to said *Hupe*, in paying off some judgments," (which are mentioned) "it being understood that the said *Byerly* is to see the said judgments paid; that is, go and pay them himself."

If there was an equity in the appellee's case, he seems to have lost it, by delaying for such a length of time to make it known. The deed which he alleges to be fraudulent against him, was executed and recorded 2nd September 1842. The appellee does not pretend that he was ignorant of its existence, or of any of its provisions. Yet, with a knowledge of this deed, he pays the money, although it does not appear that he was under any legal obligation to pay it and never seems to have complained of the deed to the appellant, until he filed his bill of complaint on the 22nd February 1844.

It seems then, that the verbal promise to execute a mortgage was principally in consideration of a verbal promise, by the creditor, to pay debts, for which, although due by the mortgagor, the mortgagee was not legally responsible. The mortgagee is presumed to have, and no doubt had a knowledge of the mortgage of the 2nd September, when he was under no legal obligation to pay any portion of those claims. It was his own fault that he afterwards undertook to pay the debts, and he cannot blame the appellants for endeavoring to secure themselves; nor can he insist that they should have forborne to take a mortgage, because of an understanding, or promise between the appellee and mortgagor, which could be enforced by neither. If, in such a case, and for anything to be found in this record, equity could decree that the mortgage first recorded should have the preference, which the act of 1825, before mentioned, gives to it, that law would become a dead letter, and the manifold evils which the law was designed to prevent, would still exist.

DECREE REVERSED.