## JOHN D. ALDERSON vs. JOSEPH AMES & ISHMAEL DAY.

A vendee having only a bond of conveyance, and before paying any of the purchase money, has an interest in the land which he can convey by way of mortgage, and the recording of such mortgage is notice of that incumbrance subject to the vendor's lien for the unpaid purchase money.

A subsequent mortgagee took a mortgage which recited that it was for a debt as between himself and the mortgagor; but the latter, with part of the money so advanced by the former, paid off the vendor's lien upon the land. HELD:

That this payment by the mortgagor, no matter how he obtained the money, discharged the vendor's lien, and let in a prior mortgage to a preference over the subsequent one; if the subsequent mortgagee desired to be treated as the assignee of the vendor's lien, he should have dealt with the vendor and not with the mortgagor.

Strangers to an instrument may impeach or contradict it by parol testimony, and so may the grantor in a contest with the grantee, on the ground of fraud or mistake, but the parties to it in a controversy with strangers cannot insist that it does not express what it was intended to express.

APPEAL from the Equity Side of the Circuit Court of Harford county.

The bill in this case was filed by the appellant, for the sale of certain real estate which had been mortgaged to him by the appellee, Ames. The land was sold, and upon the distribution of the proceeds the question arose, whether the appellant or the appellee, Day, was entitled to a priority under the circumstances stated in the opinion of this court? Two accounts were stated, one giving priority to the appel-

lant and the other giving preference to Day. The latter was confirmed *pro forma* by the court, (CONSTABLE, J.,) and from the order of confirmation the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Otho Scott* for the appellant.

The question in this case is, whether the junior mortgage under the circumstances can claim priority over the elder? We contend and insist, that mortgages in this State have priority according to the date of recording them, and that our mortgage being prior in date, and first recorded, is entitled to preference.

Equitable estates may be mortgaged, and the same priority prevails as between mortgagees of such estates as if they were legal estates. Every second mortgage must of necessity be a mortgage of the equitable estate. Our registry acts embrace every interest in land, equitable as well as legal. Equitable interests are subject to the lien of judgments and may be taken and sold under execution, and widows have dower in them.

The doctrine of specific performance has nothing to do with this question; it must be settled by the doctrine of notice. I hold that the owner of an equitable estate may mortgage it, and if such mortgage be recorded it binds as against creditors and subsequent mortgagees, all his interest in the land; it becomes part of the records of the land and is notice to every body. *4 Md. Rep.*, 107, *O'Neill vs. Cole. 8 Pet.*, 30. Day cannot claim to be substituted to the vendor's lien of Harlan, because Harlan received his money and conveyed to Ames. This released the vendor's lien, and the mortgage from Ames to Day could not revive it. This lien is a peculiar one, and if the vendor parts with it, except by express contract and transfer, it is gone, and there must be clear evidence of such transfer. *7 G. & J.*, 120, *Schnebly vs. Ragan.* The case of *Wollen vs. Hillen*, 9 *Gill*, 185, involves the very same prin-

ciple as this. There a new mortgage was taken for an old mortgage debt, the first mortgage being with the understanding that the new mortgage was to have priority, yet this transaction was held to let in intervening mortgages. See also 7 *Gill*, 354, *Clabaugh vs. Byerly*, and 6 *Gill*, 17, *Carson vs. White*.

The mortgage to Day recites that it was given for the balance due from Ames on settlement, and not for the purchase money, and in this controversy it must be taken as showing the true consideration; parol evidence cannot be introduced to explain it, and engraft upon it some agreement not stated in it. The written instruments in controversies between the parties and strangers must speak their own explanation. 2 *Gill*, 393, *Henderson vs. Mayhew*. Neither Ames nor any one claiming under him, either in a court of law or equity, in a case in which he *is actor*, can be heard to say that he had no title when he conveyed to Alderson. Our mortgage contains the word "*grant*," and our acts of Assembly having abolished *livery of seizin* and *indentation*, it means any conveyance at common law you choose; it combines them all.

*Cornelius McLean* for the appellee.

Day is a *defendant* in this case and not an *actor*, as insisted on the other side. Alderson is the complainant, and Ames was in possession of the land. The decree for the sale was not passed by consent, but under the act of 1835, ch. 380, Day had the legal title, and at law could have put Alderson at defiance forever. The latter was forced to go into equity; he had no standing anywhere else. What can equity do in such a case? It can only decree a specific performance as against the original vendor, or decree him the trustee of the purchase money for the original vendee. A decree for specific performance is not *ex debito justitiæ*, but depends upon the circumstances of the case. 4 *Gill*, 475, *Geiger vs. Green*. The principle upon which courts of equity act in regard to bonds of conveyance is given in *Story's Eq.*, secs. 750, 769, 783, 784. Ames got a bond of conveyance and before a

dollar of the purchase money was paid, Alderson takes an assignment of it by way of mortgage. Now, independent of a court of equity, he has no claim whatever. Harlan had no notice of the mortgage to Alderson. To the extent of the purchase money Alderson could not be injured by the subsequent mortgage, because if Day did pay it, he would have had to do it before he could have a single dollar's benefit of *his mortgage.* He cannot then ask priority to the extent of the purchase money paid by Day.

But what position and what rights had Alderson under this mortgage? Under the bond of conveyance no interest at law passed to Ames, and the mortgage to Alderson was only an attempted assignment of *a chose in action*, leaving the agreement in the possession of Ames. This mortgage operated only by way of bargain and sale, and therefore passed no other interest in the land than Ames had, and did not operate as an estoppel at law. 44 *Law Lib.*, 454 to 456. 4 *Kent*, 261, *note.* This mortgage is not, and cannot be under our registry acts, notice to us. These laws were passed to give notice *of title.* The most mischievous results would follow if such a mortgage as this was placed on the same footing as others. The bond of conveyance was not recorded, and there was nothing to direct Day, or any one else, to any deed from Ames to Alderson. There must be something appearing by the record itself to put parties upon inquiry. It is not like the case of a mortgage after a mortgage, for there the records give notice of the prior title.

Day also stands in a more meritorious position than Alderson, in reference to his other debt beyond the $300 paid on account of the purchase money. He advanced his money on the land, and on the same day the deed to Ames from Harlan was executed, took and received his mortgage. It may be shown by parol, that at the time of executing this deed the arrangement was made that Day should receive the mortgage. 9 *Gill*, 32, *Shepherd vs. Bevin.* There is here not only a vendor's lien, but an express agreement that Day should have his mortgage.

TUCK, J., delivered the opinion of this court.

This is an appeal from a *pro forma* order of the circuit court for Harford county, sitting in equity.

It appears that Ames purchased a lot of land from one Harlan, and took from him a bond of conveyance. He afterwards, and before payment of any part of the purchase money, mortgaged the land to the appellant, and in the mortgage assigned the bond of conveyance to him. This mortgage was recorded on the 1st October 1845. Harlan, subsequently to this, executed a deed to Ames, who, on the same day, mortgaged the land to Day to secure the sum of $503, recited in the mortgage as due "after a fair and equitable settlement of accounts" between the parties. It also appears by the parol proof, that part of this debt was for cash advanced by Day to Ames to pay for the land. The bill was filed by the appellant to foreclose his mortgage, and the question to be determined is, which of these mortgages is to be preferred in distributing the proceeds of sale, there not being enough to satisfy both?

We are of opinion that Ames had an interest in the land which he could convey by way of mortgage, and that the recorded mortgage was notice of that incumbrance, subject to the vendor's lien for the unpaid purchase money. The objection that this was only an equitable interest cannot avail. Where there are two or more mortgages of the same land, all except the first must necessarily be of mere equitable estates, and it cannot be doubted that a debtor may give a mortgage of his equity of redemption. Why, then, may not a vendee assign, by way of mortgage, his interest in the land, subject to the vendor's lien? If the property rises in value, or is improved, as was the case here, the purchaser has an interest in the excess over the original cost, even if the vendor should resort to the land for satisfaction. And if the purchase money be discharged by the debtor, his whole interest in the land will stand as security for the mortgage debt.

But, then, it is said that Day should be preferred because his money went to discharge the land from the vendor's lien.

If this view could be made good to any extent it could not avail beyond the amount so applied. He does not claim as assignee of the vendor's lien. Harlan says, in his proof, that he never made any assignment of his claim for the purchase money. Day stands upon his mortgage, and that declares in terms that it was for a debt as between himself and Ames, without reference to the vendor's lien or the purchase money for this land, even if such recitals could affect a stranger. 7 *Gill*, 362. Can he now deny the recitals in that instrument, or show why he advanced the money, and how it was applied, for the purpose of giving himself priority over a recorded mortgage? We think not. "Strangers to an instrument, when authorized to impeach or contradict it, may offer parol testimony for that purpose; and so a grantor may, in a controversy with the grantee, if he charges the same to have been obtained by fraud or mistake. But the parties to a written instrument are not permitted, in controversies with strangers, to insist that it does not express what it was intended to express." *Henderson vs. Mayhew*, 2 *Gill*, 409. In the case of *Clabaugh vs. Byerly*, 7 *Gill*, 354, an attempt was made by a junior mortgagee to obtain a preference by showing that his money, covered by the mortgage, was applied in payment of judgments against the debtor, and that he should be regarded as assignee of the judgments. Here Day seeks to be treated as assignee of the vendor's lien. But the court in that case held, that if such was the design the judgments should not have been paid; that he should have dealt, not with the debtor, but with his creditor, and taken assignments of the judgments. When once paid the lien was gone. So here Day treated with Ames, and not with Harlan. If, instead of letting Ames pay for the land and taking his deed, he had become the assignee of the lien, the case would have been different. There is no distinction in principle between this case and *Wollen vs. Hillen*, 9 *Gill*, 185, where the court decided that the release of a senior mortgage let in a junior incumbrance on the same property, although it was proved that no money was paid, but another mortgage was executed

simultaneously with the release as the consideration therefor. The release there discharged the land from the incumbrance, as the payment of the purchase money by Ames, no matter how he obtained the money, satisfied the vendor's lien, and let in the mortgage held by the appellant. The court below should have rejected the auditor's account No. 4, and affirmed No. 3, allowing the complainant's claim in full. To this end the order must be reversed and the cause remanded.

*Order reversed and cause remanded.*