# THE GENERAL INSURANCE COMPANY OF MARYLAND *vs.* THE UNITED STATES INSURANCE COMPANY OF BALTIMORE.

Mortgages of *equitable interests* in lands are *within* the registry laws of this State; these laws were designed to avoid abuse and deceits by mortgages and pretended titles, and, for the protection of creditors and purchasers, should be construed so as to effect that end.

The mortgage first recorded is *preferred,* unless the mortgagee, at the time of its execution, had *notice* of the prior unregistered conveyance, and such notice must be by *proof* of actual knowledge, or circumstances sufficient to put the party upon inquiry; the case must be so clear as to satisfy the mind that to allow the preference would be a *fraud* upon the holder of the first deed.

Notice given to a director of an incorporated institution, privately, or which he acquires from rumor, or through channels open to all alike, and which he does not communicate to his associates at the board, will not bind the institution.

A mortgagor agreed to and *did receive,* as the *consideration* of a mortgage to an insurance company for $80,000, the company's insurance policies for that sum, and *afterwards,* by an arrangement with the president of the company, delivered to him $50,000 of these policies in exchange for his (the mortgagor's) own note and that of another party. HELD:

That having received what he agreed to take as the consideration of the mortgage, the mode in which he *subsequently* disposed of a part of the policies cannot affect the *bona fides* of the transaction at the time the loan was made.

General Ins. Co. *vs.* United States Ins. Co.

Marshalling of assets is never made *ex officio,* nor at the suit of the debtor, but only at the instance of one creditor against another, and the creditor calling for it must show that his co-creditor can sustain no loss thereby, nor be in any way injuriously delayed, or have his claim subjected to any additional peril.

To authorise the appellate court to remand a cause under the act of 1832, ch. 302, the *record must indicate* that the *ends of justice* will be promoted by such further proceedings.

An auditor's report and account having been submitted by agreement, with a reservation of the right to except, and no exception on the question of *marshalling of assets* having been filed in the court below, the order ratifying the account cannot, on appeal, be reversed on *that ground.*

APPEAL from the Court of Chancery.

On the 16th of January 1834, William H. Freeman executed a mortgage to the General Insurance Company of a house and lot in the city of Baltimore, to secure an indebtedness of $15,000. This mortgage was executed under the provisions of the act of 1826, ch. 192, and *acknowledged,* but was *not recorded* until the 2nd *of April* 1834. On the 29th of March 1834, Freeman executed a mortgage to the United States Insurance Company of this same property, with *other real estate,* to secure payment of $80,000, which the instrument recites he owed to said company, "and hath promised to pay by three promissory notes, payable four, five and six months after date." This mortgage was also executed under the provisions of the act of 1826, and *was recorded on the day of its execution.* At the time these mortgages were executed Freeman held only an *equitable title* to the property, it having been originally sold for $10,000, by Shriver to Keener, who took a *bond of conveyance* therefor, paid $7000 of the purchase money, was put in possession, and subsequently sold it by *parol* to Freeman, who repaid the $7000, *received possession* in his turn, and agreed to pay the balance of the purchase money due Shriver, which balance, however, was not paid when these mortgages were executed.

The property was sold under a decree in chancery passed upon a bill filed, in 1835, by the appellee, to foreclose its mortgage, the claim of the original vendor paid out of the proceeds of sale, and the present controversy is, which of *these*

*mortgages* is entitled to *priority* of payment out of the balance of the proceeds, such balance being insufficient to pay either of them in full? The facts of the case are sufficiently stated in the opinion of the chancellor, reported in 3 *Md. Ch. Dec.*, 381, and in the opinion of this court. From the order of the chancellor confirming the auditor's account, which allowed a preference to the mortgage of the appellee, and awarded the whole balance of the proceeds of sale to its payment, this appeal was taken.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*S. T. Wallis* for the appellant, argued:

1st. That the interest of Freeman, in the property in controversy, on the 16th of January 1834, was a mere *right of action in equity*, and not such an estate or interest in land as to require that a conveyance thereof, by way of mortgage, should be *recorded* in order to be valid against *third parties*. The mortgage to the appellant, though not recorded, was consequently unaffected in its validity or priority by the recording of the subsequent mortgage to the appellee. *Acts of* 1715, *ch.* 47, *sec.* 8; 1766, *ch.* 14, *sec.* 2; 1785, *ch.* 72, *sec.* 11; 1825, *ch.* 203; 1831, *ch.* 205, *sec.* 3; 1831, *ch.* 304. *Kilty's Report of Statutes*, 249, 250. *Act of* 1810, *ch.* 160. 2 *H. & J.*, 301, *Hopkins vs. Stump.* 1 *Do.*, 532, *Cheney vs. Watkins.* 4 *Do.*, 132, *McMechen vs. Maggs.* Ibid., 329, *Woods vs. Fulton.* 6 *Md. Rep.*, 56, *Alderson vs. Ames.* *Coote on Mortgages*, 256, in 69 *Law Lib.*, 72.

2nd. That the appellee, at the time of taking the mortgage of the 29th of March 1834, had knowledge, or *notice* equivalent to knowledge, of the existence of the mortgage previously executed to the appellant, and is therefore precluded from setting up, as against the former deed, any rights secured by the latter. 2 *Hill*, 461, *Bank of the United States vs. Davis.* 3 *Do.*, 262, *North River Bank vs. Aymar.* 2 *Md. Ch. Dec.*, 25, *Ohio Life Ins. & Trust Co. vs. Winn & Ross.* *Story on Agency*, *sec.* 104, *note (b.)*

3rd. That the *consideration* of the mortgage to the appellee is proven to have *failed,* and the appellant has a right, in the worst phase of the case, to the benefit of such failure.

4th. That the mortgage to the appellee conveyed a very large quantity of *other property*, besides that which is the subject of the present proceedings, and the appellee, in order to prove itself in a court of equity a *bona fide* purchaser for value, is bound to show that by a *marshalling of the assets* so mortgaged, the *other property* would not suffice to pay its debt. The decree should, at all events, have provided for the ascertainment of that fact.

5th. That a party purchasing a *mere equitable title* does so at his own risk, and by the mere fact that the title is altogether equitable, is affected with *notice* of all prior equities and takes subject to them. This doctrine applies with peculiar force to the present case, where the interest mortgaged was a mere right to sue in equity, lying altogether in *parol*, and not evidenced by any conveyance or instrument recorded. 3 *Myl. & Keene,* 581, *Jones vs. Powles.* 2 *Sim. & Stuart,* 472, *Jackson vs. Rowe.* 1 *Brown's Ch. Rep.,* 353, *Beckett vs. Cordley.* 10 *Watts,* 13, *Bellas vs. McCarty.* 11 *Sergt. & Rawle,* 389, *Chew vs. Barnet.* 2 *Watts,* 459, *Reed vs. Dickey.* 7 *Barr.,* 165, *Kramer vs. Arthurs.* Ibid., 340, *Sergeant vs. Ingersoll.* 4 *Dessau.,* 289, *Snelgrove. vs. Snelgrove.* 3 *Strob. Eq. Rep.,* 134, *Bush vs. Bush.* 24 *Miss. Rep.,* 229, *Wailes vs. Cooper.* 7 *Cranch.,* 34, *Shirras vs. Caig.* 7 *Pet.,* 252, *Vattier vs. Hinde.* 10 *Do.,* 210, *Boone vs. Chiles.* 5 *Gill,* 481, *Baynard vs. Norris.* 7 *Md. Rep.,* 315, *Mills vs. Matthews.*

*J. V. L. McMahon* for the appellee, argued:

1st. That though Freeman's interest in the mortgaged premises was but an *equitable* one, the appellee's mortgage made and *recorded* on the 29th of March 1834, is *under our registry laws* entitled to *priority* over the *subsequently recorded* mortgage to the appellant, in the absence of proof of such *notice* to the appellee *at the time of its mortgage,* of the prior unrecorded mortgage to the appellant, as will by law suffice to

deprive the appellee of that priority. 6 *Md. Rep.*, 52, *Alderson vs. Ames. Act of* 1825, *ch.* 203. 1 *G. & J.*, 379, *Hays vs. Richardson.* 15 *Penn. State Rep.*, 319, *Russell's Appeal.* The proposition contained in the appellant's *fifth* point, which concedes the necessity of registry, but yet maintains that, notwithstanding the first registry of the mortgage to the appellee, and without notice *in fact* of the prior mortgage to the appellant, the mere fact that the title purchased by the appellee of Freeman was an *equitable* one, was *in law and of itself*, not merely notice of the rights of the outstanding legal title, as against Freeman, but also of the prior secret assignment by Freeman to the appellant, is at war with the *express* declaration of the registry acts, that the first recorded deed, as between two conveyances of the same title, shall have preference both at law and in equity, and would totally subvert, as to purchasers of equitable titles, the avowed, and in fact, sole object, of the registry laws, to protect them against prior secret conveyances to others of the same title; and would, in effect, render them entirely nugatory as to such purchasers. And, apart from these considerations, the fact that the title purchased by the appellee of Freeman was equitable, and the notice thereby of the outstanding legal title, was not, *in law*, notice of any thing but that legal title and the rights incident to it, as against Freeman, and especially not of the existence of any equity against Freeman, arising from his prior but unrecorded and secret assignment of the same title to the appellant, and above all, not to affect a title perfected by its registration, and the notice of it thereby given. Act of 1825, ch. 203. 7 *Gill*, 361, *Clabaugh vs. Byerly.* 1 *G. & J.*, 379, *Hays vs. Richardson.* 2 *H. & G*, 430, *Hudson vs. Warner.* 2 *Johns. Ch. Rep.*, 443, *Murray vs. Lylburn. Ibid*, 479, *Livingston vs. Dean.* 2 *Md. Ch. Dec.*, 37, *Ohio Life Ins. & Trust Co. vs. Winn & Ross.* 9 *Barr.* 403, *Mott vs. Clark.* 15 *Penn. State Rep.*, 319, *Russell's Appeal.* 10 *Watts*, 13, *Bellas vs. McCarty. White & Tudor*, *1 Law Lib.*, 99 to 101. 1 *Sch. & Lef.*, 96, *Bushell vs. Bushell. Ibid*, 137, *Latouche vs. Dunsany.* 2 *Ball. & Beat*, 299, *Eyre vs. Dolphin.*

2nd. That the *fact* of the notice relied upon to break in upon the registry laws and deprive the appellee of its priority under its first recorded mortgage, as guaranteed by those laws (whether it be of notice to the company or its agents) must be fully and clearly proved, so as to leave no reasonable doubt of its existence, and is not to be made out by mere probabilities, nor by mere inference or suspicion not rendering the fact certain. There was no such proof of any notice to the appellee, by the list or otherwise, nor any pretence of any notice to any agent to affect it, unless it be the alleged notice to Neff, and there is no such proof of any notice even to him. And if it were conceded that there was any such proof of notice to Neff, the notice to him, if any, was, at such time, and under such circumstances, as shown by the whole proof, that it was not, in law, notice to the appellee sufficient to deprive it of its priority. See the decision of the *Chancellor* in 3 *Md. Ch. Dec.*, 386 to 389, and cases there cited. 2 *Atk.* 276, *Hine vs Dodd.* 4 *Md. Rep.*, 231, *Winchester vs. Balto. & Susq. Rail Road Co.* 4 *Paige*, 136, *Fulton Bank vs. Sharon Canal Co.* 5 *Denio*, 337, *Story on Agency, secs.*, 140, *(a,)* 140, *(b,)* note 3, 140, *(c.)* 9 *Barr*, 27, *Custer vs. Tompkins Co. Bank*, 23, *Penn. State Rep.*, 440, *Wilson vs. McCullough.*

3rd. That there was no error in the order appealed from in not having ordered the *marshalling of assets.* The record shows, that after the chancellor's decision in favor of the appellee's priority the auditor's report was made, awarding the proceeds to the appellee, and this report was, by agreement, submitted for the chancellor's decision, without any application by the appellant for the marshalling, by answer, petition or notice, in any stage of the cause; and on this submission the order appealed from was passed. The *onus* was upon the appellant, if it deemed that it had the right to have the marshalling, and that the marshalling would afford it any relief from our established priority, to ask the aid of the court for that object, and upon proof showing a case for marshalling, and there was no error in not awarding it when not sought for.

JUNE TERM, 1857.          523

General Ins. Co. vs. United States Ins. Co.

But if such a point had been presented, there was no equity to deprive the appellee of its conceded prior right, under its mortgage, to these proceeds, or delay and hinder this prior right by throwing it over from these proceeds upon the other property mortgaged; except upon satisfactory proof that the other property was fully adequate to the payment of the whole mortgage debt due the appellee, and that it would sustain no prejudice by this proceeding. In this case there was not only no such proof, but on the contrary, by the showing of the case, the entire debt due far exceeded the estimated value of the entire property. And again, the claim to marshalling can only proceed upon the concession of our priority, and there was, therefore, no error in the only point decided below, the decision of our priority, which must therefore be affirmed.

4th. That the consideration for the mortgage to the appellee was good and valuable. It is proved that policies for the $80,000, for which the mortgage was given, were issued to Freeman, or agreeably to his directions. How he subsequently *disposed* of them, cannot affect the *bona fides* of the consideration which he agreed to take and actually received. But it is *admitted* by the agreement in the case, that of these policies so issued, $62,456 have been paid by the appellee in full, or received at full value in settlement with its creditors, and that the remaining $17,544 have been paid in, and received a dividend out the assets of the company.

Tuck, J., delivered the opinion of this court.

The chancellor correctly decided the two propositions, discussed in his opinion, filed on the 11th of April 1847, *(3 Md. Ch. Dec.,* 381;) that is to say, that the deeds are within the registry acts, and that the appellant has not shown that the appellee had notice of the deed of January 1834, when that of March following was executed.

The first of these questions has since been considered by this court, and determined in accordance with the views of the chancellor in the present case; and, after further consideration upon the authorities and argument presented at the hearing of this appeal, we see no reason to doubt the correctness

of the decision then made.    *Alderson vs. Ames*, 6 *Md. Rep.*, 52.
The same doctrine was recognized in *Watson vs. Bane*, 7
*Md. Rep.*, 117, where the right of a mortgagee of an equitable
title, similar to the present, was established.    See, also, 1 *Johns.
Ch. Rep.*, 394, *Parkist vs. Alexander*, where the chancellor,
upon the words of the New York statute, said that it embraced
mortgages of equitable titles.    We consider the language of
our registry acts equally as comprehensive, and that they must
have the same application.    They were designed to avoid
abuses and deceits by mortgages and pretended titles, and,
for the protection of creditors and purchasers, should be con-
strued so as to effect that end.    1715, *ch.* 47, *sec.* 8.    1766,
*ch.* 14.    1825, *ch.* 203.    15 *Penn. State Rep.*, 322.    The
present case shows the propriety of this interpretation.    The
mortgagor was at the time extensively engaged in speculation.
His operations were of such a character as to cause daily
changes in his property, and his pecuniary means.    He had
transactions with the appellant, which sufficiently indicated to
that company the character of his business.    They dealt with
him, and advanced money on the faith of this property, which
they permitted him to hold, even after the time limited in the
mortgage for the payment of the debt, although it contained a
power in the company to sell, under which the appellant might
have proceeded, and thereby, most probably, have prevented
the appellee from making advances on the same property.    It
does not appear why the deed was withheld from record.    It
would seem, however, from the execution and acknowledg-
ment, that it was intended to have been recorded, because, if
designed to operate only as the assignment of a right in equity,
these formalities need not have been resorted to.    It would
work great injustice, and, in many cases, gross frauds, if such
transactions were not within the registry acts, and the con-
struction now contended for by the appellant, cannot be accept-
ed by the court, without subjecting the community to such
risks.

Upon the question of notice this court said, in *Winchester's
case*, 4 *Md. Rep.*, 231, that "actual knowledge must be shown
by proof, or at least such circumstances must be proved as would

have been sufficient to put the party on inquiry.'' See, also, 1 *Md. Rep.*, 403, *Price, et al., vs. McDonald.* Applying this principle to the present case, we have not been able to discover any sufficient ground for denying to the appellee the priority claimed by it. The case must be so clear as to satisfy the mind, that the allowance of the claim would be a fraud on the party setting up the first deed. In *Wyatt vs. Barwell*, 19 *Ves.*, 435, it was said: ''A registered deed stands upon a different footing from an ordinary conveyance. It has been much doubted, whether courts ought ever to have suffered the question of notice to be agitated as against a party who has duly registered his conveyance; but they have said, we cannot permit fraud to prevail, and it shall only be in cases where the notice is so clearly proved as to make it fraudulent in the purchaser to take and register a conveyance in prejudice to the known title of another, that we will suffer the registered deed to be affected.'' And the same principle had been recognized by *Lord Hardwicke* in *Hine vs. Dodd,* 2 *Atk.*, 235, who said, ''though there are strong circumstances of notice before the execution of the mortgage, yet, upon mere suspicion only, I will not overturn a positive law;'' but, he added, ''apparent fraud, or clear and undoubted notice, would be a proper ground for relief.'' See, also, *Dey vs. Dunham,* 2 *Johns. Ch. Rep.*, 182.

No satisfactory conclusion, in aid of the appellant's pretensions, can be drawn from the testimony of Mr. Freeman. The record shows so many mistakes in his recollection, as to matters of facts, that we must suppose he had no very clear conception of his own affairs at the times at which he spoke of them. In his answer, prepared in March 1836, two years after these deeds were executed, he professes to give a relation of his business with these companies, and, in October 1849, when examined under the commission, he confidently referred to that answer, and offered to restate the same matters as part of his evidence, yet, on the cross-examination he shows, that he was greatly mistaken in particulars very material to the merits of the controversy. Reliance was placed in argument on his statement, that Neff knew as much of his affairs as he himself

did, and the inference was deduced, that he must have known of this mortgage; but we think this by no means a necessary conclusion, when we consider how his information was acquired. It is certain that these frequent conversations did not keep him advised of other matters, for he did not know of the deed to Poultney; if we are to credit every thing that appears under the commission, Freeman, himself, must have forgotten that deed, because he offered, as security for the loan he was asking. of the appellee, the very property which he had conveyed to Poultney, and when it was mentioned to him by Mr. Teackle he had so far forgotten the transaction as to misstate the facts. Neff does not appear to have overlooked any thing necessary to make his company secure. He placed the business in the hands of counsel, and if he had been advised of the deed to the appellant, or had had reason to suspect its existence, we think we should have heard something of it in the progress of the searches and investigations of title made by Mr. Teackle. As far as this record discloses, we find, that whatever were the confidential relations between them, and however well informed as to each others affairs, when a matter of business arose Neff did not rely on Mr. Freeman's statement alone, but dealt with him as any prudent man would deal with another, by resorting to counsel and the public records where evidence of titles is usually found. It is reasonable to suppose that they had frequent conversations about their affairs, as they were engaged in the same kind of operations, but the information acquired from such conversations, which do not appear to have related to any specific transaction, and which do not enable this witness to say, except inferentially, that Neff had knowledge of the mortgage, is not such notice as the law requires when it is sought to deprive a registered deed of its priority. In the multiplicity of his operations, and the fluctuations in the value of property in a large city, to say nothing of the inflated importance a speculator generally ascribes to the property in which he deals, or on which he may be seeking to raise money, conversations about business with a person employed as Mr. Freeman says he was, could not impart that clear knowledge of his affairs which a prudent man would rely on, or which should bind him in a case like the present.

We do not find in the record evidence of facts that would charge the company with notice, on the principle, that what will put a party on inquiry is equivalent to notice. Freeman offered a mortgage on this property, being, as he had been for some time, in possession. There was nothing before Neff or the company, from which they could learn, that the appellant held any lien on the security. If they had put themselves on such an inquiry, there was no more reason for seeking information from the General Insurance Company than from any resident in Baltimore.

We deem it unnecessary to examine the testimony in detail, because, conceding that Neff had sufficient notice, or that which the law deems equivalent to it, it does not appear to have been communicated to the board of directors. This question was examined by the court in *Winchester's case*, 4 *Md.*, and, after again considering it, we are prepared to affirm, with the Chancellor, as far as is applicable to the present record, "that notice given to a director of an incorporated institution privately, or which he acquires from rumor, or through channels open to all alike, and which he does not communicate to his associates at the board, will not bind the institution."

We do not perceive that the appellant can justly complain of this conclusion on the points before us. With a deed in its possession affording ample security, it overlooked or neglected the protection of the registry acts, and, in violation of the policy of these laws, left the debtor to treat with other persons on the faith of the same property; and, unless it be shown that the appellee had such notice as would make it fraudulent to insist upon its junior mortgage, the appellant must bear the consequences of that neglect.

Two other questions were presented in argument, which were not passed upon by the chancellor, viz: the consideration of the mortgage to the appellee, and the marshalling of the securities held by these companies, which we must dispose of.

In reference to the first, it appears by the cross-examination of Freeman, that he got from the appellee its policies of insurance for $80,000, and afterwards, by an arrangement with Neff, delivered to him $50,000, of them, in exchange for his

528 MARYLAND REPORTS.

General Ins. Co. vs. United States Ins. Co.

own note for $20,000, and John Clark's note for $30,000. If he received what he agreed to take as the consideration of the mortgage, it makes no difference that he subsequently disposed of a portion of the policies in the manner stated by him. We cannot say that such a transaction was not *bona fide*, at the time the loan was effected.

Next, as to marshalling. The rule in equity is well settled. The question here is, whether there is any ground for applying it? It was said by Chancellor Bland, in *Watkins vs. Worthington*, 2 *Bland*, 532, that "this equity is never administered *ex officio*, nor at the suit of the debtor, but only at the instance of one creditor against another. But the se-curities or assets can never be marshalled to the prejudice of the creditor, or so as to suspend or put in peril his claim, or upon any other terms than giving him entire satisfaction. For, in making this arrangement, the court cannot lessen his security, or vary his contract, except so far as waiting a short time to ascertain the value of the estates can be considered as having that effect. The creditor who calls for it, must show that the right of his co-creditor will neither be endangered nor injuriously delayed; for if he fails to do so, he can have no other benefit than a subrogation of his right, or the being allowed to stand in his place." And according to 3 *Bland*, 514, it must be "clear that the creditor can sustain no loss, nor be in any way delayed, or have his claim subjected to any additional peril."

It is true that, under the act of 1832, ch. 302, this court may remand a cause for further proceedings, and, in such cases, we sometimes do more than the court below could have done of its own motion, because when a cause is submitted for final decree, generally, it must be decided on the case as then presented. *Harris vs. Harris*, 6 *G. & J.*, 111. But the record must indicate that the ends of justice will be promoted by such further proceedings, in order to authorize this court to remand a cause. It is clear, that, as the case was presented to the chancellor, there was nothing by which the securities could have been marshalled, as now proposed on the part of the appellant. The decree, in this aspect, was unquestionably

General Ins Co. *vs.* United States Ins. Co.

correct. 6 *G. & J.*, 111. Does it contain such matter as to justify our interference under the act of 1832, consistently, with the views expressed by Chancellor Bland? This suit was commenced in January 1835, and the appellee was arrested in availing of its security by the appellant's setting up its deed of March 1834. Since then no effort has been made, by the appellant, to throw the appellee upon the other property contained in its mortgage. Whether in this lapse of time that property has increased or decreased in value, while the incumbrances have been accumulating, no where appears. We have seen that the court may wait a reasonable time to ascertain the value of the estates. Now, has not sufficient time for that purpose transpired? May we not conclude, that if marshalling would have benefitted the appellant, steps to that end would have been taken in an earlier stage of the cause? The appellant has not shown us, that the rights of the appellee will not be endangered or delayed to its prejudice, nor offered any suggestion, upon the record, by which we can determine that the equity of the case requires the record to be remanded.

Besides this objection, it appears that the auditor's report was submitted by agreement, with a reservation of the right to except; but the point now presented was not raised in the chancery court, and the account being in conformity with the previous opinion of the chancellor, and no exception filed, on the question of marshalling, which was not decided in that opinion, the order ratifying the account cannot be reversed on that ground. *Miller vs. Allison,* 8 *G. & J.,* 35. Act of 1825, ch. 117.

Under these circumstances, we ought not to put the appellee to further litigation and delay, on the mere possibility that, ultimately, there may be sufficient funds to pay the claims of both parties, but should allow that company the benefit of its lien, as ascertained by the order of the chancellor.

*Affirmed with costs.*