SCHNEBLY AND LEWIS, *vs.* RAGAN, *et al.—June* 1835.

The vendor of land received in payment of the purchase money, the negotiable notes of his vendee, and afterwards by a special endorsement, *without recourse* to him, assigned those notes to a third party. The notes not being paid, the holder filed a bill, claiming to be entitled to the equitable lien of the vendor against the land, for the purpose of enforcing payment of the purchase money. *Held*, that under the circumstances, he was not entitled to recover—that, as the vendor was released from all responsibility for the payment of the notes, his lien on the land was extinguished, and could not avail his assignee.

Where one party has a right of resorting to two funds, and another a right of resorting only to one, for the payment of his claim, the exercise of the right of election, by him who has it in his power to resort to two funds, shall not operate to the prejudice of the other party.

APPEAL from the court of CHANCERY.

The appellants on the 19th of May 1823, filed their bill in the court of Chancery, against *Thomas B. Hall* and others,

seeking to charge with the vendors lien, certain lands which *Lewis*, one of the appellants, had before that time sold to *Hall*. The bill alleged, that *Lewis*, in the year 1818, was in possession of a tract of land in *Washington* county, which he had previously purchased of one *Stull* and wife, and that without receiving from them a conveyance, he sold the same to *Hall*, taking his negotiable promissory notes for a part of the purchase money, without collateral, or any other security. That *Stull* and wife, then at his request, conveyed the land to *Hall*, who subsequently conveyed to a trustee for the payment of certain of his creditors, among whom was the government of the *United States*, whose claim grew out of monies received by *Hall*, as collector of the direct tax for the years 1816, 1817, and 1818. That the promissory notes, so taken by *Lewis* from *Hall*, were afterwards assigned to the other complainant *Schnebly*, by a special endorsement, and without recourse in any event to the assignor.

By a supplemental bill filed in 1831, the complainants alleged, that the *United States*, instead of coming in under the trust deed, issued a treasury warrant against *Hall* on the 2d of January 1827, under which his lands, (including the land in question) were seized and sold to an agent of the government, by whom the same were afterwards, in 1831, sold to *Richard Ragan*, and *William D. Macgill*, two of the appellees, with full knowledge that the complainants were then, by their original bill in chancery, seeking to charge said land with the payment of the aforesaid promissory notes, the amount of which, with interest, the vendees were permitted to retain in their hands, to abide the event of the suit. They further alleged, that at the time the aforesaid treasury warrant issued, and when the land was purchased by the government agent, the officers of the government had notice of complainants claim, and of the facts upon which, it is founded.

The answer of the defendants, *Ragan* and *Macgill*, (the other answers are immaterial) relies upon their title derived from the *United States*, and insists, that the notes in question are not liens on the land, nor were intended by the parties so

to be. They do not admit that they were given on account of the purchase money; but this was fully established by the proof taken under the commission, as was also the allegation of notice of the complainants claim as charged in the bill; and that a portion of the purchase money was retained by the defendants, to meet such claim, if it should be sustained by the courts.

At September term 1833, the cause was argued before *Bland* Chancellor, who dismissed the bill with costs, upon the ground, that the plaintiffs have no lien whatever which can be sustained, or in any way made available, against the title of the defendants.

From this decree, the complainants appealed to the Court of Appeals.

The cause was argued before STEPHEN, DORSEY, and CHAMBERS, Judges.

PRICE and ANDERSON for the appellants, contended,

1. That a vendor has an equitable lien for unpaid purchase money, unless waived by some unequivocal act, whether the legal title is in him, or not. *Hughes vs. Kearney,* 1 *Sch. and Lef.* 132. *Ib.* 135. 1 *Fonb. Eq.* 371, 374. *Sugdens Vendors* 386, *&c. Gilman vs. Brown, et al,* 1 *Mason* 212. *Cole vs. Scott,* 2 *Wash. Va. Rep.* 141. *Tompkins vs. Mitchell,* 2 *Randolph* 429. *Ridgely vs. Carey,* 1 *H. and McH.* 172. *White vs. Casanave,* 1 *Harr. and Johns.* 106. *Bayley vs. Greenleaf,* 7 *Wheat.* 50.

2. That the assignment of the claim, carries with it the benefit of the lien to the assignee, to the same extent, it existed in the vendor. *Martin ex dem Weston vs. Mowlin,* 2 *Burr* 978. *Green vs. Hart,* 1 *Johns. Rep.* 590. *Jackson vs. Blodget,* 5 *Cowen* 202. *Patterson vs. Hull,* 9 *Cowen* 751. *Hatch vs. White,* 2 *Gallison* 158. 1 *Powel Mort.* 110, 266. 2 *Powel Mortg.* 402, 403, 647. This lien exists in favor of the vendee's personal representative, where the vendor has recovered his purchase money from the personal assets. In

such a case, the personal representative has a right to resort to the land, for the money thus taken by the vendor from the personal estate. *Evelyn vs. Evelyn*, 2 *Pr. Wms.* 664, *note* (1) 1 *Roper on Legacies* 630, 635.

3. That this a specific lien, which will prevail against the priority of the United States, in cases where priority is given by law. *Conard vs. Atlantic Ins. Co.* 1 *Peters S. C. R.* 439, 441, 442. *Conard vs. Pacific Ins. Co.*, 6 *Ib.* 262.

4. But the right of the *United States* to priority only exists in cases of insolvency, which is not shown to have been the case here. They are therefore only entitled to the benefit of the lien given by the acts of Congress, which is subordinate to prior incumbrances, among whom must be ranked the vendor for his purchase money, and those clothed with his rights. The lien given by the acts is not specific, but general, as in case of a judgment, and is subject to equities. Acts of 22d July 1813; 9th January 1815. *Sugden Vendors* 398, 386. *Grant vs. Mills*, 2 *Ves. and B.* 309. *Finch vs. Earl of Winchelsea*, 1 *Pr. Wms.* 277. *Ib.* 282. *Howe's case*, 1 *Paige* 125. *Ib.* 128. *Ellis vs. Tousley*, *Ib.* 280. *Sanford vs. McLean*, 3 *Paige* 117. *Ib.* 123. *Ex'r. of Poloney and Read vs. Kernan and others*, 3 *Dessau* 74, 77.

WILLIAMS, for the appellees argued—

1. That *Lewis* had no *legal* interest in the land, and a vendor's lien does not attach to an *equitable* interest. *Bayley vs. Greenleaf et al*, 7 *Wheat. Rep.* 46.

2. If *Lewis* had a lien, *Schnebly* had none—there was no privity between him and the purchaser. He was merely the transferree of two notes, executed after the actual conveyance of the land.

The lien under the acts of Congress must attach to subsequently acquired real estate, in like manner as judgments do; there being no statute making the latter, liens on such subsequent acquisitions.

4. *Schnebly* is merely the transferree of two notes; there is no pretence that he received any formal transfer of a lien.

The notes merely evidence the sum due—they cannot be evidence of a lien, where one exists.

5. If the endorsement of the notes, transferred the lien, then the notes must have contained the contract of lien, and are the only evidence of it; and if so, the lien of the *United States*, must prevail against it, as being prior in point of date, *Brown et al, vs. Gilman,* 4 *Wheat.* 255. *The St. Jago de Cuba,* 9 *Wheat.* 409. He referred in the argument to the acts of Congress, 22d July 1813; 2d August 1813; 9th January 1815; 5th March 1816.

STEPHEN, Judge delivered the opinion of the court.

We think, that the court below committed no error in dismissing the complainant's bill in this case.

The appeal taken from the decree of the chancellor presents but a single question for the consideration and decision of this court. That question is, whether the assignee of a *chose in action*, given to the vendor for the payment of the purchase money of a tract of land, and by him assigned, is entitled to the benefit of the equitable lien of the vendor, against his vendee, or persons claiming under him with notice, there being an express stipulation at the time of the assignment, that in no event should the assignor be held responsible by the assignee for the payment of the money secured by the said notes. The notes in this case, were given by *Hall* to *Lewis*, to secure the payment of the purchase money of the land sold by him to *Hall*. *Lewis* was closed only with the equitable title, and whether he was entitled to the benefit of the lien for his purchase money (the complete equitable title being in him, he having paid for the said land) is a question not free from difficulty. In *7th Wheaton* 46, it appears that the right to such a lien was considered doubtful by the *Supreme Court of the United States ;* at least, a difference of opinion appears to have prevailed among the members of that court upon the question. But we do not deem it necessary to decide the right to such a lien in this case; because, whether it exists or not, we do not think the appellant entitled to the benefit of it.

In the case referred to in 7th *Wheaton, C. J. Marshall* says, "It is contended for the defendants, that as the legal title to the estate was never in *Baily*, he never had a lien upon it for the purchase money. Upon this point some difference of opinion exists in the court, and we pass it over without positively deciding it." A vendor parting with the legal title, still retains his lien, as a security for the payment of the purchase money, and the vendee holds the land as trustee of the vendor. *Prima facie*, the equitable lien exists, and it lies upon the purchaser to shew a waiver of it. *Carson vs. Green*, 1 *J. C. R.* 308. So, on the other hand, if the purchaser of an estate, prematurely pays the purchase money, before the estate is conveyed to him, the money will be considered as a lien on the estate in the hands of the vendor, for the vendee, or in case of his death for his personal representatives. 2 *Mad. Ch.* 104—5. In 1 *Ohio Reports* 318, we find a decision upon the question involved in this case ; and the court there decided that the lien does not exist in favor of the assignee. They say, it is an equity between the vendor and vendee, which the notes cannot effect, but which exists in the same character, whether a note be given or not. This equity arises to the vendor for his own safety, but it cannot be transferred to another."

We are not, however, prepared to go to the full extent of this decision, if the court meant to say, that the assignee could not obtain the benefit of this lien by express contract. In 1 *Paige Ch. R.* 502, the chancellor seems to hold a different doctrine, and intimates his opinion to be, that although the lien does not pass by implication, or construction, still that it may pass by express agreement. But we do not intend, nor do we deem it necessary to go further, than to decide, that under the particular circumstances of this case, the assignee of the notes, is not entitled to the benefit of the vendor's lien, if such lien exists. We think, that when the notes were assigned by *Lewis* to *Schnebly*, with an express stipulation, that he was in no event to be responsible for the payment of them, the effect and operation of the agreement produced an extinguishment of the vendor's lien, because so far as he was

concerned, it amounted to a payment and satisfaction of his claim. The lien was intended to secure the payment of the purchase money to the vendor; and the assignment of the notes without responsibility for their ultimate payment, it is to be presumed, was equally as beneficial to him, as if he had received the amount of them in money. In the case from *New York* before referred to, the chancellor, in speaking of the rights of the assignee of a *chose in action*, given for the payment of the purchase money of land sold, holds the following language. " The claim of the complainant for a specific lien on the premises, upon the ground that his judgment was obtained on a note given for a part of the purchase money, cannot be sustained. At the time he bought the note of *Kingsbury*, (who was the vendor) the latter unquestionably had such a lien; but it is not pretended, there was any agreement that such a lien should be transferred to the complainant. If *Kingsbury* could be considered as still retaining any such claim, after the transfer of the note, it must be on account of his liability as endorser thereof. But there is no evidence, or even allegation, that any steps were taken to charge him as endorser. In a recent case, where the vendor had negotiated the note, but was obliged to take it up himself when it fell due, *Ld. Eldon*, sustained the claim of the original vendor to a lien on the land, *Ex parte Loaring*, 2d *Roses* cases 791. But I am not aware of any case, where the assignee of the note, or other security has been permitted to sustain such a claim, on an implied agreement to assign the lien."

We therefore think, that, as by the terms of the assignment, the vendor was released from all responsibility for the payment of the notes, his specific lien on the land for the purchase money was extinguished, and cannot be available for his assignee. It is true, the benefit of the vendor's lien, has been extended to a legatee, where, upon the death of the purchaser, without payment of the purchase money, the vendor has resorted to the personal assets for the satisfaction of his claim, and has thereby exhausted the fund out of which the legacy was to be paid. But this has been done upon the principle

of substitution, and is also founded upon the common, and familiar doctrine of the court, that where one party has a right of resorting to two funds, and another only a right of resorting to one, for the payment of his claim, the exercise of the right of election, by him who has it in his power to resort to another fund, shall not operate to the disappointment, or prejudice of him, who has only a right of resorting to one. And moreover, the authorities are conflicting even as to such a right of a legatee, though the weight of authority seems to be in favor of the right. 1 *Rop. on Leg.* 634, 635. We are therefore of opinion, that the decree of the Chancellor is correct, and ought to be affirmed.

DECREE AFFIRMED.