## John Watson *vs.* Harvey Bane, John Winters, David Clagett & Samuel B. Clagett.

Two vendors sold a large tract of land but gave no deed therefor.    The vendee paid a part of the purchase money leaving a balance unpaid.    Subsequently a judgment was recovered against the vendee, and on the day following the rendition of this judgment, the vendors united with the vendee in a mortgage of *a part* of the land to another party to secure a debt due by the vendee to the mortgagee.    A bill was afterwards filed for a sale of

this mortgaged portion, and a question arising as to the distribution of the proceeds of sale, it was HELD :

1st. That the vendor's lien did not pass to the mortgagee, from the fact that the vendors united in the execution of the mortgage, but the mortgage was a *waiver of it* upon the mortgaged premises to the extent of the mortgage claim.

2nd. But whilst the mortgage operated as such waiver, it did not satisfy or extinguish any portion of the claim of the vendors upon their vendee : their *entire* claim for unpaid purchase money, was a lien upon the land *not included* in the mortgage.

3rd. The judgment being a lien upon all the lands of the vendee, both those included in the mortgage and those not, equity, for the protection of the mortgagee, will require the judgment creditor to look *first* to the lands outside of the mortgage, upon which also the vendors' claim is thrown.

4th. But if the outside lands will not pay the vendors and the judgment creditor, then to the extent of the mortgage, or so much thereof as may be necessary to pay the judgment, the claim of the vendors must be abated : they waived their preference over the judgment to this extent, by uniting in the mortgage

5th. If the mortgaged lands should more than pay the mortgage, the balance is to be added to the outside lands, and from the fund so constituted the vendors, and the judgment are to be paid if sufficient, if not, the vendors after deducting the amount of the mortgage are to be paid first, next the judgment, then the balance due the vendors, and if in this order of payment any part of the judgment remains unpaid, the deficiency must be supplied from the proceeds of the mortgaged lands.

6th. The cause must be remanded, to ascertain whether the lands outside the mortgage are sufficient to pay the judgment and the vendors' claim, before the mortgagee shall have his claim reduced or abated in favor of the judgment creditor.

7th. If difficulties or serious impediments should arise in satisfying the judgment from these outside lands, the court may, if they think the equity of the case justifies it, direct the judgment to be paid out of the proceeds of the mortgaged lands, and order it to be assigned to the mortgagee, or order such assignment if the mortgagee pays the claim from his own funds.

A vendor of land can assign his vendor's lien, by an express agreement to that effect, but the lien will not pass by implication or construction.

APPEAL from the equity side of the Circuit Court for Allegany County.

This appeal was taken from a decree of the court below, (PERRY, J.,) for the sale of certain mortgaged real estate, upon a bill filed by the mortgagee, Winters, and directing how

the proceeds of sale should be distributed between the mort-gagee, Watson, a judgment creditor of Bane, one of the mortgagors, and the two Clagetts the vendors of this and other property, sold by them to Bane, but who also united with Bane in the mortgage to Winters. The facts of the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLE-STON, TUCK and MASON, J.

*George A. Pearre* for the appellant, argued:

1st. That the bill filed in this case was upon *the mortgage*, and not by Winters as an equitable assignee, *pro tanto*, of the vendor's lien of the Clagetts. A bill upon the vendor's lien could not be filed until the remedy at law was exhausted. 12 *G. & J.*, 477, *Richardson vs. Stillinger*. 2 *Md. Rep.*, 137, *Eyler & Matthews vs. Crabbs*. 6 *G. & J.*, 495, *Pratt vs. Vanwyck*. 2 *Md. Ch. Dec.*, 308, *Ridgeway vs. Toram*. Besides a vendor's lien cannot be assigned except by express contract, 7 *G. & J.*, 120, *Schnebly & Lewis vs. Ragan*. 1 *Md. Ch. Dec.*, 220, *Dixon vs. Dixon*. In the case of *Igle-hart vs. Armiger*, 1 *Bland*, 519, the chancellor went so far as to decide, that a vendor's lien cannot be assigned even by express contract.

2nd. The mortgage executed by the Clagetts, does not operate as an assignment *pro tanto* of their vendor's lien to Winters, but as an absolute release or waiver of this lien in the mortgaged premises. 9 *Smedes & Mar.*, 122, *Clower vs. Rawlings*. 2 *Story's Eq.*, sec. 1224. And this release or waiver operates as well for the benefit of all prior encumbran-ces, and indeed of the whole world, as for the benefit of Winters, because if a bill had been filed by the Clagetts, to enforce their vendor's lien, and Watson had been obliged as a subsequent encumbrancer to pay them off, he would have been entitled to be substituted in their place, (2 *Story's Eq.* sec. 1227,) but by joining in this mortgage to Winters, they had deprived themselves of their vendor's lien upon the mort-

gaged property, and therefore Watson could not have enforced the vendor's lien against the mortgaged land, by substitution in the place of the Clagetts. 1 *Mason*, 213, *Gilman vs. Brown.*

3rd. The decree excludes Watson from any portion of the proceeds of the mortgaged premises, until the same are applied to the mortgage debt, to the *full* amount of the balance due to the Clagetts for the purchase money of *all* the lands sold Bane, which includes other lands besides those mortgaged. Now, as to these lands not covered by the mortgage, the Clagetts' vendor's lien has priority over every other lien. If, therefore, the mortgaged premises alone should sell for less than the balance of purchase money due the Clagetts for *all* the lands, then Watson is wholly cut out, as by the decree, the mortgaged debt is to be first paid to the extent of the *whole* balance of unpaid purchase money : and when the Clagetts file a bill against the residue of the land, to pay the vendor's lien, Watson has no priority over them as to that. This is a decree subjecting a *part* of the land, subject to the vendor's lien, to the whole of the lien, for the benefit of Winters, the third encumbrancer. The Clagetts could not have done this upon a bill filed by them. Under a decree obtained to pay the vendor's lien, Watson might have purchased *all* the lands and then paid that lien; but under this decree he might have been compelled to pay the whole amount of the vendor's lien as the price of a part of the land.

4th. Watson being a party, is bound by this decree. 12 *G. & J.*, 318, *Brooks vs. Brooke et al.* After a sale made under this decree, he could not sell the land under his judgment. This being a bill to foreclose a subsequent mortgage, it should have provided absolutely for the payment of the prior judgment. 3 *Johns. Ch. Rep.*, 465, *Haines vs. Beach.* 3 *H. & J.*, 484, *Bell vs. Brown.* Under a bill filed on the vendor's lien, Watson might have shown, that the Clagetts had not exhausted their remedy at law, or could have shown how the amount due them might at law have been satisfied, without resort to the land. Or he might have redeemed the ven-

dor's lien, which, as a judgment creditor, he had a right to do. *6 G. & J., 443, Griffith vs. The Frederick County Bank.* But under *this bill*, a sale is to be forced, unless Watson redeemed the subsequent mortgages, which may be more than the vendor's lien. If Watson redeemed the vendor's lien, he could stand still until he was redeemed.

5th. There is no provision in this decree for the ascertainment of the purchase money due to the Clagetts; and there is nothing appearing in the record to show it.

6th. The decree is more extensive in its operation than the court had power to go, by the allegations of the bill. The bill did not even notice the fact, that the Clagetts were the vendors of this and *other* land, and that they had a vendor's lien for unpaid purchase money; and yet the decree travels out into all that, and undertakes to settle equities not noticed in the bill, and to pass a decree affecting and settling those equities. The decree of the court cannot go beyond the allegations in the bill; and any decree not justified by the allegations in the bill is erroneous. A court cannot pass a decree to embrace new matters brought out by the answers: to do this, the bill must be amended. No exceptions to the averments of the bill, need be made in such a case. *6 G. & J., 171, Evans vs. Iglehart.*

7th. The decree does not provide and decree that the vendor's lien of the Clagetts, shall be satisfied to the amount paid on the mortgage of Winters. That question may be still open upon a bill filed by the Clagetts against the rest of the land. It does not settle the rights of the parties.

8th. The execution of the mortgage by the Clagetts, is an agreement not to look to that land for the vendor's lien. *7 G. & J., 306, Hodges vs. Planters' Bank.*

*George Schley* for the appellee, after stating the facts of the case, argued that the decree of the court below was correct:

1st. Independent of the mortgage to Winters, the vendor's lien of the Clagetts would unquestionably be the *first* incumbrance upon this property, having priority over Watson's

judgment and every other lien. 12 *G. & J.*, 341, *Repp vs. Repp.* 3 *Md. Ch. Dec.*, 488, *Ringgold vs. Bryan.* Now what effect has the execution of this mortgage? The Clagetts, the vendors, and Bane, the vendee, both unite in its execution, for the purpose of securing to Winters the mortgage debt. Now it is said upon the other side, that the effect of this is, that the Clagetts have released their vendor's lien as to the whole world. But this is not my view of the law of the case, or of the intention of the parties at the time. The Clagetts united in the mortgage, simply because they held the legal title, and they intended to postpone their lien in the mortgaged premises, to Winters the mortgagee, and to nobody else. What inducement was there for them to give up their lien upon the whole property in favor of every body? They received no consideration, they got nothing for it. The only effect of the deed and the only intent of the parties to it, was to waive the vendor's lien in favor of Winters alone. If a wife unites with her husband in a mortgage, though the husband should afterwards release the equity, the wife will be entitled at his death to her dower in the lands, *subject to the mortgage*, and if they are sold under the mortgage, then to her claim as for dower in the surplus proceeds. She waives her claim only to the extent of the mortgage, and only in favor of the mortgagee; as to all other parties her claim still exists. 4 *Kent's Com.*, 44. 1 *Md. Ch. Dec.*, 202, *Mantz vs. Buchanan.* It is an assignment *pro tanto* of her dower right. So in this case, the mortgage by the vendors was an assignment *pro tanto* of the vendor's lien in favor of the mortgagee only, and this was the obvious intent of the parties. If Bane had paid the mortgage debt, for whose benefit would the payment have enured? Clearly for the benefit of the Clagetts; in that case Bane could not have said, and would not be heard in equity to say, that as *to him* the Clagetts had waived their lien. The judgment creditor could be *injured* by no acts of the Clagetts: the execution of the mortgage could not affect him *injuriously*, and it was not the intention of the parties that he should be *benefited* by it. He was not

a party to the deed, and stands in the same position as if the mortgage had never been executed.

2nd. But, if I am wrong in this position, there is still another principle upon which this decree must be affirmed. Watson's judgment was a lien upon *all* the lands owned by Bane, both those outside of the mortgage as well as those included in it. He had therefore two funds to which he could resort for the payment of his debt, *one of which* was also bound by the mortgage to Winters, whilst the other was not. In such a case he will be compelled to resort to the one not bound by the mortgage, or in other words the funds will be so distributed as to protect the mortgagee, who has a lien upon one of them only. This is a familiar doctrine of equity, and needs the citation of no authority in its support.

ECCLESTON, J., delivered the opinion of this court.

The two Clagetts sold to Bane a considerable landed property in Allegany county, but a deed was not given for the same. Part of the purchase money was paid, but it does not appear in the record how much remained unpaid.

On the 15th of May 1851, after the sale, Watson obtained a judgment against Bane in the circuit court for Allegany county. The day after this judgment a mortgage was executed by Bane and the two Clagetts, to secure to Winters a debt of $2000, due by Bane to Winters, which mortgage included but a part of the land purchased by Bane from the Clagetts.

After stating the debt as due by Bane to Winters upon a single bill, the mortgage then recites: "And which said single bill the said Harvey Bane is anxious to secure on certain lands bought by him of the said David Clagett and Samuel B. Clagett, and to which the said Harvey Bane has only an equitable title. And whereas the said John Winters requires the execution of this mortgage, both by the said David Clagett and Samuel B. Clagett, who have the legal title, and by the said Harvey Bane, who has the equitable title: Now this indenture witnesseth, that the said David

Clagett and Samuel B. Clagett, and Harvey Bane, with a view to secure and make safe to the said John Winters, his heirs and assigns, the said sum of $2000 due upon the said single bill," &c.

This claim not being paid when due, the present bill was filed, praying that the mortgaged premises might be sold for the payment of the debt.

Watson came in by petition, asking permission to become a party defendant, and, by consent of the solicitor for the complainant, the court passed an order in conformity with the prayer of the petition.   The answer of Watson was then filed, in which it is alleged that large sums, on account of the purchase money, had been paid by Bane to the Clagetts, amounting in the whole to the sum of $5159.44.   That inasmuch as the Clagetts united in the mortgage, their vendor's lien upon the mortgaged premises was released, not only in favor of Winters, but also as against all incumbrances prior to the mortgage.   That his (Watson's) judgment was a prior lien to the mortgage, and that Winters could not have a decree for the sale of the mortgaged lands without redeeming the judgment; or, at least, that the decree should provide for the payment thereof, prior to the payment of the mortgage, out of the proceeds of sale.

The solicitor of Winters agreed to receive this answer without oath, and to admit the truth of the facts therein set forth; the agreement stating the object to be, to raise the question of priority between Watson and Winters.

It appears an amended bill had been filed, but it is not in the record.

In the answer of the Clagetts to the original bill, they admit the matters charged, and say they have no objection to a decree being passed as prayed.   But in answering the amended bill they say they cannot admit any of the facts mentioned in it, and claim a lien for purchase money upon the land included in the mortgage, after payment of the mortgage debt and the complainant's costs.   And they pray that in any decree which may be passed, the court will reserve to them all rights which they may have as vendors.

The court passed a decree, directing the mortgaged premises to be sold, and the manner in which the proceeds should be applied. By the terms of the decree it is rendered necessary to ascertain the amount of purchase money due from Bane to the Clagetts; and, as part of that amount, the mortgage debt is first to be paid, together with interests and costs. Then, next in order, the proceeds of sale are to be applied to the payment of any balance of purchase money due the Clagetts. After which the residue of the money, (if any,) arising from the sale, is to go towards satisfying the judgment creditor. And from this decree the appeal is taken by Watson, the judgment creditor.

In the examination of this case the first subject of inquiry is, whether, by uniting in the mortgage, the Clagetts assigned a portion of their vendor's lien to Winters; or whether that instrument operated as a waiver of the lien, *pro tanto?* If the deed is to be considered an assignment, it is only so by *implication or construction*, for it contains no *express* contract or agreement to assign.

In *Schnebly & Lewis, vs. Ragan*, 7 G. & J., 120, Lewis sold to Hall a parcel of land, taking his negotiable promissory notes for a part of the purchase money, without collateral or any other security. The land had been purchased from Stull and wife, by Lewis, without his receiving a conveyance. Subsequently, at his request, Stull and wife conveyed the land to Hall, who conveyed it to a trustee for the payment of certain of his creditors, among whom was the government of the United States. The promissory notes, so taken, were afterwards assigned by Lewis to Schnebly, by a special endorsement, and without recourse to the assignor. The bill was filed by Lewis and Schnebly, seeking to charge the land with the vendor's lien. The defendants held and claimed the land by virtue of sales made under proceedings on the part of the United States.

The Court of Appeals held, that inasmuch as the notes were assigned to Schnebly by Lewis, expressly stipulating that he was not to be responsible for the payment of them,

the transfer, upon such terms, operated as an extinguishment of the vendor's lien, "because, so far as he was concerned, it amounted to a payment and satisfaction of his claim." In the examination of the subject, however, the court refer to a number of cases in which the vendor's lien, his right to assign it, and the mode of doing so, are treated of. One of the cases alluded to, is in 1 *Ohio Rep.*, 318. There the lien is held to be an equity between the vendor and vendee, which exists, whether a note be given or not; and that this is an equity for the vendor's own safety, but it cannot be transferred to another. In reference to this case the language of our court is: "We are not, however, prepared to go to the full extent of this decision, if the court meant to say that the assignee could not obtain the benefit of this lien by express contract." And immediately after this remark they add: "In 1 *Paige Ch. Rep.*, 502, the chancellor seems to hold a different doctrine, and intimates his opinion to be, that although the lien does not pass by implication or construction, still that it may pass by express agreement."

On page 126 of 7 *G. & J.*, a quotation is made from the opinion of the chancellor in 1 *Paige*, the concluding sentence of which is: "But I am not aware of any case where the assignee of the note, or other security, has been permitted to sustain a claim on an implied agreement to assign the lien."

Although in *Schnebly & Lewis, vs. Ragan,* the court do not actually decide the question, yet in the views expressed by them they have intimated, as strongly as they could, without so deciding, their opinion to be, that a vendor can assign his lien by an express agreement, but the lien will not pass by implication or construction. Which view we think correct in principle, and is sustained by authority.

This being so, the lien of the Clagetts did not pass to Winters, but the mortgage was a waiver of it upon the mortgaged premises, to the amount of the mortgage claim. And such we think was the intention of the parties, as manifested by the transaction. The deed was to secure a debt due by Bane to Winters, and to gratify these parties the Clagetts

united in it, without receiving any equivalent or consideration for doing so, as far as can be seen from any thing in the record. But whilst the conveyance operated as such waiver, it did not either satisfy or extinguish any portion of the claim of the vendors upon Bane, because they executed the mortgage with him and for his convenience. After that the vendor's entire claim for unpaid purchase money was a lien upon the lands purchased by Bane, not included in the mortgage, and not conveyed by the Clagetts to other persons at Bane's request.

Although Winters cannot stand in the place of the Clagetts, and claim the vendor's lien, but is simply a mortgagee one day junior to Watson's judgment, yet as this judgment is a general lien, and therefore binds, not only the lands embraced in the mortgage, but also the other lands of Bane, Winters may say to him, your claim is a lien upon the lands, both inside and outside of the mortgage, whilst mine is confined to those inside, and a court of equity, for my protection, may first require you to look to the outside lands.

Thus the vendors and the judgment creditor will be thrown upon the lands not subject to the mortgage. And if they are sufficient to pay both, all parties may receive their claims, without injury to either. But if the outside land will not pay the Clagetts and Watson, then, to the extent of the mortgage, or so much thereof as may be necessary for the purpose of paying the judgment, the claim of the vendors must be abated. This loss they will be subjected to, because, by the mortgage, they waived their lien to the extent of the mortgage debt, for the benefit of Winters, without the assent of Watson, and of course, to his prejudice, if, notwithstanding the mortgage, they can claim the whole of their lien out of the residue of the lands in preference to the judgment. When the mortgage was given all the lands were subject to the lien of the vendors and that of the judgment creditor, the former having the preference. But that preference they lost, to the amount of the mortgage, by uniting in that instrument.

If the mortgaged lands should sell for more than enough to

satisfy the mortgage, the balance of the proceeds may be added to the lands not mortgaged, and out of the fund so constituted the Clagetts and Watson are to be paid, if sufficient. But if not, then the claim of the former, after deducting the amount of the mortgage, is first to be paid, next the judgment, and then the balance due to the Clagetts as far as the funds will go. Should it turn out that in this order of payment the judgment, or any portion of it, remains unsettled, that deficiency must be supplied from the proceeds of sale arising from the mortgaged lands.

The case of *Aldrich vs. Cooper,* 8 *Ves.*, 382, is authority for throwing the Clagetts and Watson, first, upon the lands not embraced in the mortgage, for the benefit of the mortgagee. At page 395, Lord Eldon says: "Suppose another case; two estates mortgaged to A and one of them mortgaged to B. He has no claim under the deed upon the other estate. It may be so constructed that he could not affect that estate after the death of the mortgagor. But it is the ordinary case to say, a person having two funds shall not, by his election, disappoint the party having only one fund; and equity, to satisfy both, will throw him who has two funds upon that which can be affected by him only, to the intent that the only fund to which the other has access may remain clear to him." This principle is to be found also in *Cheesebrough vs. Millard,* 1 *Johns. Ch. Rep.,* 412; in *Averall vs. Wade, Lloyd & Goold,* 252, in 10 *Cond. Eng. Ch. Rep.,* 498; and in 9 *Gill,* 194, 195.

Watson has no execution on his judgment levied upon the mortgaged premises, but he comes into a court of equity seeking to deprive the mortgagee of the benefit of his specific lien under and by virtue of the general lien of the judgment, when it would seem from Watson's own answer in the cause there are other lands bound by the judgment. For he says, "This respondent further states, that the said Harvey Bane had purchased from the said Clagetts the mortgaged premises, together with *other lands* lying in Allegany county, upon which the said Bane, prior to the execution of the said mortgage and prior to the judgment hereinafter mentioned in favor of this respondent, had paid to the said Clagetts large sums of money." Under

the circumstances, this is a very proper case for a court of equity to require, that it shall first be ascertained whether there are lands sufficient to satisfy the Clagetts and Watson before the mortgagee shall have his claim reduced or abated for the benefit of the judgment creditor.

We refer to *Gibson, et al., vs. McCormick*, 10 *G. & J.*, 110 to 112; *Watts vs. Symes*, 16 *Sim. Rep.*, 640, and the authorities there cited; *Clower vs. Rawlings, et al.*, 9 *Smedes & Mar.*, 122; and *Stevens vs. Cooper*, 1 *Johns. Ch. Rep.*, 430; not, however, as cases strictly analogous to the present, but because the principles involved in them have relation to assigning, waiving, or extinguishing liens, and the effect of such acts.

The record does not show whether, upon the principles stated as applicable to the case before us, the lands are sufficient to pay the lien of the vendors and the judgment, without any abatement of the mortgagee's claim, and therefore it will be proper to send the case back for such further proceedings as may be necessary to obtain the requisite information for adjusting the rights of the respective parties, according to the views expressed in this opinion. If, in the future progress of the cause, looking to the lands not embraced in the mortgage for the purpose of satisfying the judgment, circumstances shall be disclosed presenting difficulties or any serious impediments in that mode of settling the claim, the court may, if they think the equity of the case justifies it, direct the judgment to be paid out of the proceeds of the mortgaged premises, and order the judgment to be assigned to the mortgagee. Or, they may order the assignment to be made if the mortgagee thinks proper to pay the claim out of his own funds. In *Cheesebrough vs. Millard*, Chancellor Kent admits the equitable principle, that where there is a lien on two different parcels of land and another junior lien on one of those parcels only, and the party holding the elder claim elects to have his whole demand out of the land bound by the lien of the junior creditor, the latter may either have the prior creditor thrown upon the other fund or have the prior lien assigned to him, and receive all the aid it

can afford him. He says, "This is a rule founded in natural justice, and I believe it is recognised in every cultivated system of jurisprudence. In the *English* law it is an ordinary case, that if a party has two funds, he shall not, by his election, disappoint another who has one fund only, but the latter shall stand in the place of the former, or compel the former to resort to that fund which can be affected by him only." In support of which, reference is made to a number of cases. See also *Stevens vs. Cooper.*

Under the act of 1832, ch. 302, without reversing or affirming the decision below, a decree will be signed remanding the cause for the purpose of having the principles announced in this opinion carried into effect.

*Cause remanded.*

Tuck, J., dissented, and delivered the following opinion:

I concur in opinion with my brother judges, that this record should be remanded, to enable the parties, by proper proceedings, to bring into the case the lands sold by the Clagetts to Bane and not included in the mortgage to Winters. I do not perceive that justice can be done to the parties without subjecting all the lands now held by Bane to the incumbrances thereon, according to the well known principle, that where one creditor may resort to two securities and another has a resort only to one, the former shall be required to enforce his claim first against that fund upon which the latter has no lien.

In considering the mortgage to the appellee, Winters, and its effect upon the rights of the Clagetts, I have arrived at a different conclusion from that indicated by the court in the opinion filed. It is manifest to my mind, that they did not design to extinguish their lien for any portion of the purchase money due by Bane; and, unless there be some settled rule of law giving such effect to their concurrence with him in executing the mortgage, that instrument should receive no other interpretation than that which its terms indicate as the intent of the parties to it. Lord Mansfield, in the case of *Eaton vs. Jaques,* 2 *Doug.*, 460, said: "To do justice between men, it is necessary to understand things as they really are, and construe

instruments according to the intent of the parties." *Calvert vs. Bradley*, 16 *Howard*, 593. This is a leading principle, which should be departed from only when the law has clearly assigned a different effect to the language employed.

In my opinion, the Clagetts, by uniting in the mortgage, postponed so much of their lien as vendors for the accommodation of Bane and Winters, "with a view to secure and make safe" to the latter his debt of two thousand dollars, and to no greater extent. This is the express object of the mortgage, which contains the usual clause of defeasance on payment of this debt. If the debt had been paid by Bane, for whose benefit would this payment have operated? Would not the Clagetts have been restored in equity to their prior position as against Bane? He could not have said that the vendor's lien had been extinguished by the mortgage; and yet, if extinguished for Watson's benefit, is it not gone as to everybody? This, indeed, was the argument on the part of the appellant. But any such pretension on Bane's part would have been against the terms and design of the instrument and little short of a fraud upon the Clagetts, which no court could countenance. The question there is, shall they be in a worse plight as to Bane, and those claiming through him, merely because he did not pay the debt? It is true that Watson cannot be injured by these arrangements, but will the law improve his position where the parties have not so intended at the expense of the vendors? The title has never been in Bane but is in Winters, not as the real owner, though at law he is so considered, but as the mere holder of the land as a security for his debt, on the payment of which, equity treats him as a trustee for the mortgagors, according to the intent of the parties. Bane was in no better condition, as to this property, after, than he was before the mortgage. There was no point of time, after the rendition of Watson's judgment, at which Bane had a more perfect title or larger interest in the land covered by the mortgage, on which the judgment could fasten as a lien, than he had at the moment it was obtained. In this respect the case differs from *Alderson vs. Ames & Day*, 6 *Md. Rep.*, 52, where the vendee having paid for the land and taken the deed to himself, we

held, that the mortgage existing at the time the legal title was completed in the purchaser was a lien, in preference to the one executed to Day. If Bane had taken a deed to himself and then given the mortgage to Winters, the cases would have been governed by the same principle.

It was insisted in argument, that the Clagetts, by uniting in the mortgage, extinguished their claim against that portion of the land, and that it did not operate as an assignment, *pro tanto*, of their lien as vendors, for which the case of *Schnebly vs. Ragan*, 7 *G. & J.*, 120, was much relied on. I do not consider that case as authority beyond the very point there decided. The court say, in so many words, that they do not intend to go further than to decide the case before them on its particular circumstances. The judge delivering the opinion does discuss the general doctrine, and I think it may be fairly inferred that he entertained the opinion, that according to the authorities such a lien might pass by express assignment, though it could not by implication or construction. But he does not say in what the difference between these modes of transfer consists. Looking to the case then under review, and those referred to in the opinion, I conclude, that he considered one class as embracing those where the writing between the parties imported an intent that the lien should pass, and that he meant to designate, as implied or constructive assignments, those where the lien was claimed by operation of law, in the absence of any thing on the paper to indicate such an intent, as, for example, where the vendor merely indorses or assigns the note of his vendee for the purchase money. The cases referred to in which the lien was held not to have passed were of this character. But where the instrument states an agreement, or shows an intent between the parties that the lien shall pass as a security for the amount due on the purchase money, there is no less reason for allowing such a transfer than there is for giving to the assignee of a debt the benefit of a mortgage taken for its security, where the mortgage is not expressly assigned.

In applying the case of *Schnebly vs. Ragan*, it is important to observe the ground on which the decision was placed. The court held that the lien did not pass because it was extin-

guished. But how? By reason of the endorsement without recourse to the vendor, whereby he had derived the same benefit from the transfer as if his claim had been paid. Having no equity himself against the land his assignee could claim none through him. The equity remains until the vendor is satisfied. The cases referred to by the judge go further, they show that, where the vendor assigns the note of the vendee for the purchase money, the lien remains with him as vendor, if he is liable on the note either by express guaranty, or where he may be made responsible by due diligence on the part of the assignee against the maker of the note. In one case the lien was enforced by Lord Eldon, in favor of the vendor, because he was obliged to take up the vendee's note which he had negotiated; but in the other such relief was denied to an assignee, where it did not appear that the vendor remained liable. This is the view taken of the law by the late Chancellor, in *Dixon vs. Dixon*, 1 *Md. Ch. Dec.*, 220, where he held that the lien exists for the security of the vendor, and continues as long as may be necessary for that purpose. If these cases have any application to the one before us, they appear to militate against the views presented on the part of the appellant. It is manifest that the Clagetts had not been paid when the mortgage was executed, nor since. For this reason the objection to their claim, as holders of the vendor's lien, after payment thereout of Winter's mortgage, on the ground of extinguishment by satisfaction, cannot apply. If they have lost this remedy they have done so improvidently, and without any consideration, either of advantage to themselves, or damage to Watson, who claims the benefit of their act. Are they not within the principle of these decisions? They are, to be sure, not liable as endorsers of the vendee's notes, which although a contingent responsibility only, would have protected them if the transaction had been of that character, but they have not been paid, and are without security, if the argument on the part of the appellant be correct, which places them in a worse predicament. They are, in my judgment, as equitably entitled to the benefit of the

security as if they were endorsers of the vendee's note.  The argument carries us too far when extended to legitimate results.  If the lien has been extinguished, it is gone forever as against every person?  But can this be so as against Bane, who assented to the arrangement and profited by it. Equity will not tolerate any such idea, and if not as to Bane, the same consequence must follow as to a creditor claiming by judgment against him.

That the parties to this deed intended it to operate as an assignment of the lien, I have no doubt.  Their object was to have Winters' debt "secured and made safe."  This, undoubtedly, could not have been accomplished more effectually than by making him the first incumbrancer.  Indeed this view of the case is necessary to give effect to the deed, for it is by no means clear that Winters will be paid if the vendor's lien be treated as extinguished, and Watson's judgment let in before the mortgage.  The judgment had been rendered, and we must presume that the parties had knowledge of its existence.  The only way that Winters could be made safe, as against that judgment, was by becoming assignee of the vendor's lien.  If the mortgage is allowed that interpretation, Watson will be in the same situation that he occupied before, and the transaction will affect the Clagetts and Winters only. As to them the former thereby postponed so much of their preferred lien; but Watson cannot be affected injuriously, nor should his interest be promoted by the arrangement.  He has no reason to complain, whereas the Clagetts may be seriously injured if the mortgage should have stamped upon it a character and corresponding effect different from the intent of the parties.

Whether this be treated as an assignment of the lien, or as a postponement by the Clagetts of their claim, *pro tanto*, for the benefit of Winters, appears to me to be of little importance.  In either aspect of the case the result must be the same.  I have no doubt that a prior incumbrancer may agree to postpone, provided it does not affect other creditors.  This was allowed in *Alexander vs. Ghiselin,* 5 *Gill,* 187, where the

court, with consent of the parties claiming a specific lien on the negroes, by a stipulation at the bar, qualified the agreement under which they claimed, so as to give judgment creditors a priority over them. It was a matter between these incumbrancers, which did not concern the other creditors, as to whom the trust fund stood, as if the qualification had not been annexed to the alleged agreement. If that rule be applied here, the judgment of Watson will not be displaced, but will sustain the same relation to the other incumbrances on the mortgaged property that it occupied before the mortgage was executed, leaving the equities arising out of that instrument, as between the parties to it, to be adjusted among themselves, and without prejudice to the rights of others.

For these reasons I differ from the court as to the instructions for the ultimate distribution of the proceeds of sale.