Durham vs. Rhodes & Wife, et al., and Simmons, et al., vs. The Same.

(Decided June 16th, 1865.)

---

SOPHIA DURHAM *vs.* HENRY RHODES and Wife, and others; and THOMAS J. SIMMONS and others, *vs.* The Same.

DOWER: DEVISE IN LIEU OF DOWER: SUBROGATION.—A testator, by his will, dated 21st Dec. 1829, after providing for the payment of his debts and funeral expenses, left all his property, real and personal, to his wife, and appointed her his executrix. In November 1838, the testator purchased certain real estate, for which he paid one-third cash, and gave his notes for the balance, taking a bond of conveyance from the vendor, and died, leaving the notes unpaid. His widow elected to take under the will, and administered on and settled up the estate, paying the notes for the balance of the purchase money. The widow afterwards died, leaving all her estate to S. D. Subsequently the real estate, purchased as above, and not passing under the testator's will to his wife, was sold, and S. D. having made a claim to be allowed out of the proceeds of sale, as devisee of the widow, for the amount of the purchase money paid by the widow, as executrix of her husband, and for the widow's dower interest in the estate so sold,—HELD:

1st. That the acceptance by the widow of the devises and bequests in the will of the husband, barred her dower in the subsequently acquired property.

2nd. That the acceptance has respect to her dower in all the property of

30	v.23.

Durham *vs.* Rhodes & Wife, *et al.*, and Simmons, *et al.*, *vs.* The Same.

which she would otherwise be endowed at the time of the act of acceptance.

3rd. That in this State every devise of land or bequest of personal estate to a widow, unless otherwise expressed in the will, shall be construed to be intended in bar of her dower in lands or personal estate respectively.

4th. That a general legacy to a widow, in lieu of dower, accepted by her, stands upon a different footing from other general legacies, merely voluntary. It will be entitled, in the payment of it, to a preference over general legacies, even where the amount of the bequests exceeds the value of her dower, for in this matter the husband is the only and best judge of the price at which he purchased it.

5th. That as the vendor exercised his right of resorting to the widow and general legatee for payment of his claim for the unpaid purchase money of the estate sold, and discharged it by that means, and to that extent diminished her legacy in lieu of dower, equity will relieve her, and subrogate her to the rights of the creditor; and therefore the claim of S. D. to be allowed out of the proceeds of sale for the balance of said purchase money paid by the widow, should be allowed.

CROSS-APPEALS from the Circuit Court for Baltimore city:

Solomon G. Albers, in December 1829, executed his testament and last will, directing, first, all his just debts and funeral expenses to be fully satisfied and paid out of his estate by his executrix; and then devising and bequeathing all his estate of every kind and description, real, personal and mixed, without reservation or exception, that he was in any manner entitled to or could claim, wherever situate or being, to his wife Elizabeth Albers, her heirs, executors, &c., and constituting her sole executrix.

On the 10th November 1838, he purchased from George Brown certain real estate in the city of Baltimore, for the sum of $1,800, paying $600 thereon, giving his two several promissory notes of $600 each, in one and two years from the sale, with interest, and taking from Brown a bond for the conveyance of the title on the full payment of said notes and interest.

Albers, the testator, died in October 1839, his will unchanged, having been admitted to probate on the 19th day of October in that year, and letters testamentary were granted to his widow. She did not renounce the devises and bequests made to her by the will of her husband.

It is conceded, that Albers died intestate of the property in Baltimore, purchased from Brown; all these events having occurred before the passage of the Act of 1849, ch. 229.

A bill was filed originally in Baltimore County Court, as a Court of Equity, by some of the heirs of Solomon G. Albers, for the sale of the property thus undevised, which resulted ultimately in a decree for the sale of the same. The property was sold,—the sale reported by the trustee, and a conditional order of ratification passed. At this stage of the proceedings, Elizabeth Albers, the widow and devisee, filed her petition, alleging that she paid the balance of the purchase money due Brown, which fell due after the testator's death, being $1,200 and interest thereon, and claiming to be paid the amount so paid by her, and interest thereon, out of the proceeds of sale of said real estate; this claim, however, being made without prejudice to, and with reservation of her right to a share in lieu of dower out of the proceeds of said real estate, she maintaining that her acceptance of the devise in her behalf by Solomon's will, had not the effect of precluding such dower claim, and she demanded and prayed payment of this claim also.

At the same time the purchaser filed a petition to be relieved from his purchase,—the sale was set aside,—a supplemental bill filed, making additional parties, and another decree for the sale of the property, was passed in October 1852, by the Superior Court for Baltimore city. Before this time, viz : in March 1850, Elizabeth Albers had died, having devised all her property, absolutely, to her sister Sophia Durham, who applied to the Court, as such devisee, and claimed the said property, or at all events, the money paid by her testatrix, with interest thereon. The property was again sold, the sale reported and finally ratified.

The answer of the other parties in interest to the petition of Sophia Durham, admitted the payment by Elizabeth Albers of the unpaid purchase money, &c., but denied that the property passed to her under the will of her husband, or that she had any claim upon it or the proceeds of sale, either for dower or for the balance of the purchase money

paid by her; and alleged that she and ·Sophia Durham had the possession, use and enjoyment of the said property, from the death of Solomon Albers until after the death of said Elizabeth, and insisted upon an account for the rents thereof.

The auditor reported an account distributing the net proceeds among the heirs at law of Solomon G. Albers, without regarding the claims of Sophia Durham. To this account Sophia Durham excepted, and with a view to the hearing of her exceptions, admissions were filed, showing the payments, and their amounts and dates, by Elizabeth Albers to George Brown, for the real estate purchased by the testator Albers from him, and now sold by the trustee under the decree. It was further admitted, that the personal estate of Solomon G. Albers was sufficient for the payment of his debts; and that his widow occupied the real estate purchased from Brown for a considerable period after her husband's death, and that she abided by her husband's will, never having renounced the devises and bequests made to her in it; and also, that her estate had been fully settled by her executors, and that Sophia Durham was entitled in her own right, as legatee, to whatever claim she had upon this fund.

The Circuit Court for Baltimore city, to which the proceedings had been transferred, allowed the claim, with deductions for rents, but disallowed any claim for dower, and passed an order referring the case to the auditor, with instructions to state an account or accounts, in conformity with his opinion filed in the cause. From this order Wm. D. Travers, Thomas J. Simmons and West & Patterson, creditors and assignees of Henry N. Albers, one of the heirs, appealed.

Sophia Durham also appealed from the order, so far as an allowance was refused for dower interest in the real property sold.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*C. J. M. Gwinn*, for the heirs at law of S. G. Albers:

It is contended that the purchase money, left unpaid by Solomon Albers at his death, for the property bought from George Brown, was only a debt due from his estate, evidenced by the promissory notes he gave, and secured by the lien, which Brown had for the purchase money.

These notes, as evidence of such debts, were obligatory upon the estate of Solomon Albers and upon his executrix, and were specifically within the terms of the obligation which she assumed by acceptance under the will, for they were "just debts" at his death.

She was entitled, if she had seen proper, to renounce the provision made for her by her husband in this will, and to have relied upon her rights as widow, but, as she did not so renounce, she must be held to have accepted in lieu of her dower, the property left her in the will of her husband, and she must be held to have accepted the conditions on which that property was left to her.

If her husband left debts, it does not matter out of what transaction those debts originated,—whether they were connected with the property, which passed to her by will, or with property which did not pass by will, or with articles which had been consumed, or had perished:—they still were debts, which were to be paid, before she could fully enjoy the devised or bequeathed property on which the will specifically operated. If she could refuse to pay, as executrix, a note given for property which did not pass by the will, because she derived no benefit from that property, as devisee or legatee, she could as readily refuse to pay a bill incurred for the clothing or subsistence of her husband, upon the ground that the value of that clothing or subsistence could not be specifically traced among his devised or bequeathed assets. But she could not so refuse. The estate in her hands, devised or bequeathed to her, was responsible for these debts due to Brown,—she was obliged as executrix to pay them,—they were debts which were to be paid by her as executrix, before she could hold the remainder of the

property as devisee or legatee, and no payment of these debts could therefore, in any sense, constitute her a creditor of the estate, or give her a claim upon the estate, by reason of the payment of these debts.

If she acquired no right as a creditor, by the payment of these claims, none passed by her will to Sophia Durham, and the Court, therefore, was wrong in deciding that such right passed.

This legal view would, it is thought, be correct, if the said Elizabeth Albers had been a stranger to the testator, Solomon Albers, and had not been his widow; for when she did not renounce her claim under the will, to the real and personal estate given to her in it, her rights, as widow, either to dower or to a distributive share of the personalty, ceased, (1798, ch. 101, sub-ch. 13, secs. 1, 2,) and she occupied, *quoad* the property included in the will, the position of a stranger made sole devisee and legatee. She was a stranger, receiving the property of the testator, after she had, as executrix, paid the debts for which that property so devised or bequeathed to her, was responsible. The payment of such debts by her as executrix, could never have constituted her a creditor. These debts were practically, claims for which the property left to her was bound, and their payment was a condition precedent to the enjoyment of that property by her as devisee or legatee. The payment of these debts, in connection with the abandonment of her right of dower, was the very consideration which made her a purchaser, under the terms of the Act of 1798, ch. 101, sub-ch. 13, sec. 5. Taking all on which the will could operate, it was for her to determine whether the consideration which she gave, made up as it was of her right of dower, and of her obligation to pay the debts of the testator, was more or less than the grant made to her. Whether it was more or less, she elected to take all that he had at that time in bar of her dower, and as a fund for the payment of his debts, and by that election she is bound. She cannot take the estate as it stood when his will was

made, instead of her dower in the estate as it stood at his death, on condition that she pays his debts, and then claim to be allowed the debts out of property which did not pass by the will, and to hold the property which did pass by the will, free from the operation of the very obligation which she assumed in taking under the will.

The Court below, therefore, was wrong in allowing the sum paid by Elizabeth Albers to Sophia Durham, because no right existed in said Elizabeth Albers to demand said sum of the estate, and none passed to her devisee or legatee, Sophia Durham, by her will.

To the cross-appeal of Sophia Durham it may be observed, that that appeal is stated to be from the refusal of the Court below, to allow Sophia Durham for the dower-interest of Elizabeth Albers in the property bought by Albers, in his lifetime, from Brown.

How could it be possible that Sophia Durham could have any claim on this property, by reason of the dower interest of her devisor in that property? Elizabeth Albers was dead on the 3rd April 1850, and her right of dower in this real estate, even if any remained in her, ended with her life, the property remaining in its original shape, and not having been sold with any reference to her dower, nor any allowance by way of dower in this property having been made, or having vested in her, in her lifetime. No claim, therefore, of any sort against this property, arising out of any supposed right of dower in this property, existed, which was capable of passing to Sophia Durham. But no question can arise upon any claim of dower in this property bought from Brown, because the right of dower in this property acquired by Albers subsequently to his will, was barred by Elizabeth Albers' acceptance under the will. The property acquired subsequent to the will, was free by her acceptance under the will from all claim of dower on her part. This is directly decided in *Chapin vs. Hill*, 1 *R. I. Rep.*, 446.

Nor is this decision needed in support of the language of the Act of 1798, ch. 101, sub-ch. 13. The language of

Durham *vs.* Rhodes & Wife, *et al.*, and Simmons, *et al.*, *vs.* The Same.

that Act is, "that every devise of land or any estate therein, to the wife of the testator, shall be construed to be intended in bar of her dower in lands, unless it be otherwise expressed in the will." The statute does not say, "in bar of dower in lands devised by the will," but, "in lands" generally, whether devised by the will or not. The ninety days· allowed for renunciation, are given to enable the widow to ascertain whether it is to her advantage to accept or renounce under the will. She then ascertains whether she will be gainer or loser, or decides for reasons satisfactory to her judgment. But when she does not renounce, the devise she accepts is in bar of dower in the lands, in all the lands of her husband, whether included in the will or not.

The counsel for the heirs at law of Albers, are constrained to admit, that the points presented in the appeal, are not the points stated by the Circuit Court in its opinion, but they are the points really disclosed by the record, and are the points before this· Court on appeal. The first point made in the opinion of ·the Circuit Court, does not exist in this cause, by reason of the terms of the will, under which Elizabeth Albers took, she being executrix as well as sole devisee and legatee. Nor do the cases cited by that Court cover the case. They are cases of legatees of specific legacies, and not cases of residuary legatees.

. *Charles F. Mayer*, for Sophia Durham, relied upon the authorities cited in the opinion of the Court below, (KREBS, J.,) and upon the additional case of *Chase vs. ·Loockerman*, 11 *G. & J.*, 185.

WEISEL, J., after stating the facts of the case,. (*ante, p.* 234, *et seq.*,) delivered the opinion of this Court, as follows :

Elizabeth Albers, or her devisee Sophia Durham, was no party to the proceedings in equity for the sale of the after acquired property, except by their petitions aforesaid. The claim to dower in it, is only important as it stands

connected with the other claim for purchase money paid, as in the event of the latter being allowed a deduction for rent is prayed, it being shown or admitted that the said Elizabeth was, and remained in possession of said property from the death of her husband, and for a considerable period afterwards. The amount of such deduction would therefore depend upon the determination of the question, whether she had dower or not in said property.

We are of opinion, that the acceptance by Elizabeth Albers of the devises and bequests in the will of her husband, barred her dower in the subsequently acquired property. Had she renounced these, she would have taken dower in it, though held by equitable title only, under our Act of Assembly, in such case provided. The acceptance has respect to her dower in all the property, of which she would otherwise be endowed at the time of the act of acceptance, and bars it; just as she would have taken dower, at that time, in all such lands, if she had renounced. We think this is a proper construction of our Acts of Assembly upon this subject 1798, ch. 101, sub-ch. 13, secs. 1, 2, 3, 4. 1831, ch. 315, sec. 2.

The case of *Chapin vs. Hill*, 1 *R. I. Rep.*, 446, referred to and commented upon by the learned Judge below, in his opinion upon this point, upon a similar state of facts, and under similar statutory provisions in that State, is a direct decision sustaining this view. We concur in the ruling of the Circuit Court of Baltimore city, upon this point; the result of which is to make Elizabeth Albers, or her estate, responsible to the heirs at law of Solomon G. Albers, for the full rents, issues and profits of said after acquired property, for the whole period, during which, she and her devisee Sophia Durham, were in possession of the same, after the death of said Solomon, subject to all proper allowances for repairs, taxes, &c., on it.

The other and main question,—the claim by the legatee, widow, upon the fund for repayment of the purchase money paid by her,—is one of interest and nicety, and, if

it were *res integra*, the views of the learned counsel for the other appellants, would strike the mind of this Court with the greater force. The debts contracted for the purchase in this case, are debts for which the estate devised is liable. It would seem reasonable, if not incontrovertible, that a widow, taking under a will in lieu of dower, after full time allowed by law to enable her to make a judicious election, (that time, in Maryland, being six months after administration granted,) would take an estate devised to her after the payment of all debts and expenses subject to those debts. But a review of the authorities upon this question in England, and recognised by this Court, leads us to adopt the view presented by the learned Judge who decided this case below, and to affirm his ruling in this particular also.

A widow, to whom a general bequest is made by her husband in lieu of dower, is a purchaser of that which she takes under the will with a fair consideration. 1798, ch. 101, sub-ch. 13, sec. 5. 1 *Rop. on Leg.*, 297. *Snively vs. Bevans*, 1 *Md. Rep.*, 223. *Gibson vs. McCormick*, 10 *G. & J.*, 113, 114. *Mantz vs. Buchanan*, 1 *Md. Ch. Dec.*, 205. In this State every devise of land or bequest of personal estate to a widow, unless otherwise expressed in the will, shall be construed to be intended in bar of her dower in lands or personal estate respectively. 1798, ch. 101, sub-ch. 13, secs. 1, 2, 3. And if such a devise be assailed by creditors as unjust or injurious to them, and in fraud of their rights, she will be allowed full satisfaction for her dower. 1 *Bland*, 204, 205, *Margaret Hall's case;* and 10 *G. & J.*, 113, &c., above. In such case the widow does not take by way of bounty, or as a donee or volunteer, but as a meritorious purchaser and contractor.

A general legacy to a widow, in lieu of dower, accepted by her, stands upon a different footing from other general legacies merely voluntary. It will be entitled in the payment of it, to a preference over such general legacies, even where the amount of the bequests exceeds the value of her

dower; for in this matter, the testator is the only and best judge of the price at which he purchased it. ·1 *Rop. on Leg.*, 297, 298. *Burridge vs. Bradye*, 1 *P. Wms.*, 127. *Blower vs. Moret*, 2 *Ves. Sen.*, 420. *Davinhill vs. Fletcher*, *Amb.*, 244.

The widow, therefore, being not only a legatee, but a favored purchaser for a fair consideration, whose legacy is not to abate in favor of other general legacies, simply voluntary, how does she stand with regard to a fund, to which a creditor of the testator can resort by virtue of a lien, but whose claim, as a debt against the deceased, she discharges?

The rule for marshalling assets, as a matter of equitable jurisdiction, is applied in favor of legatees. Here the widow became entitled to the devises and bequests of the will, in lieu of her dower, and her dower in the subsequently acquired estate, was barred by her acceptance of the provisions of the will. The vendor had two funds to resort to for his unpaid purchase money; the real estate sold by him, on which his lien specifically rested; and the personal and other estate of the testator, which had been devised to the widow in lieu of her dower. He resorted to the legatee, and she discharged his claim, by that means, and to that extent, diminishing her legacy. In such case, equity will relieve the legatee, and subrogate her to the rights of the creditor. "A person having power to resort to two funds, shall not, by his election, disappoint another having one fund only." Such has been the current of authorities in England, since the case of *Trimmer vs. Bayne*, decided by Sir Wm. Grant, in 1803, 9 *Ves.*, 209. The case of *Sproule vs. Prior*, 8 *Simons*, 189, decided in 1836, by Sir L. Shadwell, Vice Chancellor, (and mainly relied upon by the learned Judge below;) and that of *Selby vs. Selby*, 4 *Russ.*, 336, decided in 1828, by Sir John Leach; review all the previous authorities, and settle the law in England upon this question in favor of legatees, against heirs, devisees and creditors. See, also, *Austen vs. Halsey*, 6 *Ves.*, 475. *Mackreth vs. Symmons*, 15 *Ves.*, 339. *Headley vs.*

*Readhead, Cowp.,* 50. *Aldrich vs. Cooper,* 8 *Ves.,* 397. 2 *Ross on Leg.,* 630 to 635. This doctrine was recognised by this Court in the case of *Schnebly & Lewis, vs. Ragan,* 7 *G. & J.,* 126 and 127.

We therefore pronounce the order of the Circuit Court of Baltimore city, correct upon both grounds. The cause will be remanded for the purpose of having an account restated by the auditor, in conformity with this opinion, and with directions to take the necessary proof; each party to pay his or their own costs in this Court and the Court below.

*Order affirmed and cause remanded.*

(Decided June 14th, 1865.)